Parker, J.
This case comes into this court by petition in error from the common pleas, where the Ohio Insurance Company was plaintiff, and the Sun Oil Company was defendant. The petition filed by the plaintiff below sets forth that it is a duly incorporated insurance company, authorized to do business in the state of Ohio; that the defendant, The Sun Oil Company, is also an incorporated company, engaged in the business of mining for and producing petroleum oils; that on the 16th day of September, 1893, the plaintiff insured George Bowe and William M. Bowe against loss or damage by fire, to their barn, hay, grain, fodder and seed and certain other property, in an amount not exceeding $1017,25. That while said contract of insurance was in force, certain of this property was destroyed b} fire; that the amount of the loss so occurring was $1017.25, which the plaintiff was-required to and did pay to the Bowes. The petition then proceeds to charge that this fire occurred through the fault and negligence of The Sun Oil Company; that while it was engaged in the prosecution of its business of mining and drilling for petroleum oil, it used a certain boiler to operate a certain engine and machinery, in proximity to this barn and other property so insured. That upon the day the fire occurred there was a high wind prevailing and blowing from *357 the direction of this boiler toward this barn and other property; that the Sun Oil Company failed to use proper screens or other precautions to prevent sparks from being emitted from the smoke-stack of this boiler; that they burned wood' under the boiler, which caused large sparks, and a great many of them,and that on that account,'and on account of the prevailing wind or gale, their action was negligent, and that in consequence of this negligent action, certain litter in and about the barn was fired, and the fire was communicated therefrom to a straw-stack next to the barn, and this property was so destroyed.
The answer denies the allegations upon which the conclusion of negligence is founded.
The claim of the insurance company was for $1017.25, which it had been required by the Bowes to pay in consequence of this fire. They claim that by operation of law they became subrogated to the rights of the Bowes as against The ¡Sun Oil Company. The case went to a jury, and the jury returned a verdict in favor of the plaintiff below for the full amount claimed, and upon this verdict a judgment was entered.
The principal contention here, on behalf of the plaintiff in error is: that the case stated in the petition was not made out by the proofs; that if any case was made out by -the proofs, it was one widely varying from that stated in the petition — -that there was either a failure of proof,or a material variance. This contention was based chiefly upon the claim that it was fairly established by the evidence that there was no negligence on the part of defendant below in the use of the sort of fuel that was used under this boiler, and that there was no negligence in not using a screen or spark-arrester over the smoke-stack. It does not appear to have been claimed on behalf of the plaintiff below that these acts,either of them,amounted to negligence per sé; but that, under the circumstances, considering the proximity, of the *358 barn and these inflammable materials, and the gale that was blowing from the direction of the engine towards the barn, and the further fact, which appears in the evidence, that the servants of the defendant below who were operating this boiler had been cautioned against the danger — that all of these facts and circumstances combined amounted to negligence on the part of defendant below.
After a careful consideration of this question, we do not And that there was any failure of proof, or variance, which required the court below to act upon the motion of the defendant below to arrest the case from the jury.
It is also contended that the verdict is against the weight of the evidence. We do not deem it necessary to go through this bill of exceptions and review the evidence, but we have read it and considered it, and it seems to us that the jury was justified in finding as they did — that the defendants below were guilty of negligence; that the verdict is amply sustained, as I have intimated. The engine was situated but a short distance — some 300 or 350 feet — from this barn, straw-stack, litter, etc., and the wind was blowing in that direction, and sparks were blowing out of the smoke-stack; and, in addition to these considerations,, a fire had been communicated from this boiler to a fence-post, or part of a fence,-between the boiler and the barn, and npon this fire being extinguished, the attention of these servants of the defendant, The Sun Oil Company, was called to the fact that fire had been so communicated from their boiler, and they were cautioned against operating the boiler as they were operating it under the existing conditions; they were told that it would probably result in the burning down and destruction of the premises of the Bowes. They seem to have recognized (he fact that the operation was dangerous, and promised to correct their mode of operation so that the danger would be averted; but it appears that they did not do so, and the fire resulted.
*359 This contention seems to have been based on the theory of counsel for plaintiff in error — that the insurance company was bound to make out the same kind of a case of negligence against the Sun Oil Company as it would be required to make out m order to successfully resist an action upon the part of the Bowes upon the insurance policy. To resist this action upon the policy successfully, or to give a right of action to the insurance company against the Bowes, if the act had been their act — the setting of fire to this property — 'it would have been necessary to show that the negligence was so gross as to amount to wilfullness or fraud. It is contended that the rights of the insurance company against the tort feasor are no greater than the rights of the insurance company against the insured; but we are not cited to any authority in support of this contention,and we know of none. We regard it as a novel proposition, and one in support of which we can think of no good reason.
The rule as to the insurance company, that is to say affecting the right of the insurance company against the insured, grows out of and is modified by the contract of insurance. The Sun Oil Company, the defendant below, is not privy to this contract: it has no rights under it. Its rights against the insurance company are not enlarged by it, nor are the rights of the insurance company against it in any way reduced, qualified, or limited by it. The consideration does not proceed from the Sun Oil Company to the insurance company, and no promise runs from tbeinsurance company to the Sun Oil Company. The rule is too well settled to admit of any doubt, or to require any discussion or the citation o'f any authorities, that if the insured property be destroyed through the fault or negligence of another than the insured, the insurance company, upon payment of the loss, will be subroga,ted to the rights of the insured owner to recover from the wrong-doer to the extent that the insurance company has been obligated to pay, and *360 has paid. The rights of the insurance company under such circumstances are precisely those of the owner against the wrong-dcer.
The rules of law applicable to the case appear to have been very fully, clearly and correctly given by the court in its charge to the jury. There are certain exceptions noted to the charge, but we do not deem it necessary, in view of the course the discussion has taken, to say more than this in reference to the charge. We find no error in it.
It was also contended on behalf of the plaintiff in error that the court below erred in failing or refusing to submit to the jury certain written interrogatories which it is said were submitted by counsel for the defendant below to the court for that purpose and with that request. These interrogatories are spoken of by counsel for plaintiff in error as if.they were the same thing as the special verdict provided for by the code. There seems to be a material difference and distinction between the two, and one that should be considered in order that what has been held with ■ reference to each and the application of what we shall say here shall be understood. The law with reference to special verdicts and special interrogatories seems to have been incorporated into a statute,for the first time,in the state of New York,although a similar practice obtained in this country before that, both in courts of law and courts of equity — especially in the latter. The other states appear to have followed in their enactments the New York code pretty closely, and our statq. ute upon the subject appears to be almost, if it is not exactly, identical with the statute of Indiana. There appears to have-been a great many decisions in the state of Indiana under this statute. In our state, there are not so many. When questions arise upon these special verdicts, we are usually referred to the decisions of the courts of Indiana, which are very full and numerous. I call attention, without reading, to sec. 5200, Revised Statutes, which defines *361 special and general verdicts, and read section 5201, which is a counterpart of section 546 of the Indiana code:
“In all actions the jury, unless otherwise directed by the court, may, in its discretion, render either a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues, and in all cases when requested by either party, the court shall instruct the jurors, if they render a general verdict,to find specially upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon, and the verdict and finding must be 'filed with the clerk and entered on the journal.”
Bee. 5202, — (which is the same as sec. 547 of the Indiana code), provides: ‘‘When the special finding of facts,” (not the special verdict), “is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly.”
Answers to interrogatories (the propounding of which seems to be the form in practice, of stating in writing the particular questions of fact upon which the finding of the jury is desired), control the general verdict, but do not dispense with it. The special verdict differs, from this finding as to particular facts or issues, in that it is a finding by the jury upon all facts or issues upon which evidence is submitted, without interrogatories, and it dispenses with the general verdict. In other words,, a general verdict has no place in a case where a special, verdict is returned, whether such special verdict is returned by direction of the court, on its own motion, ‘or by request of the parties, or by the jury without any direction from the court.
This distinction is pointed out in a number of Indiana cases. I call attention to the case of The Louisville, New Albany & Chicago Railway Co. v. Balch, 105 Ind. Reports, 98. Referring to sections 546 and 547 of the Indiana code, the court says:
“These sections of the statute clearly provide for two kinds of verdicts, a special and general verdict.- They do *362 not together form one verdict, but are separate and distinct.
“A general verdict is a finding generally for the plaintiff or defendant upon the facts and’ the law as given by the court in instructions. A special verdict is a finding of the facts only. In this, the jury have nothing to do with the law. The court does not instruct them as to the law, but in the rendition of the judgment, applies the law to the facts found by the jury.” Citing Indianapolis, etc., Ry. Co. v. Bush, 101 Ind. 582.
“There is a marked distinction between a special verdict, and interrogatories propounded to the jury. These are allowed only in case a general verdict is found, and are allowed for the purpose of discovering whether or not the jury have rested their verdict upon sufficient, material and consistent facts. They may be propounded in reference to one or more of the material facts in the case. Such interrogatories cannot accompany a special verdict, because the special verdict is itself the finding of the facts. It is perfectly. consistent to allow interrogatories to accompany a general verdict, for the reasons stated, but it would not be consistent to allow both a general and special verdict in the same case, for the reason that one finds both the law and the facts of the case, while the other finds the facts only, leaving the law for the court in the rendition of the judgment. Each is a mode different from the other, in reaching the final conclusion in the case, and settling the ultimate rights.of the parties.
“The jury, unless otherwise directed, may find either a general or special verdict; but if, upon the request of either party, they are required' to' find a special verdict, they should not return a general verdict also. These views are fully sustained by the well considered case of Todd v. Fen-ton, 66 Ind. 25. ”
There is more discussion of the question in the authority from which I have read,
It has been held with reference to special verdicts — and the statute is clear upon the subject — that it is sufficient for counsel to demand that a special verdict shall be rendered.
But it is held that the court is not bound to comply with *363 a request to submit interrogatories, unless coupled with the qualification that the same are to be answered only in case a general verdict is returned. ' If no verdict is returned, or if a special verdict is returned, the jury may not be required to answer the interrogatories, There are a great many decisions to this effect. A I call attention briefly to one or two.
The Cleveland, Columbus, Cincinnati & Indianapolis Ry. Co. v. Bowen, Adm'r., in the 70 Ind. p. 478:
“A jury can only be required to answer special interrogatories conditionally upon their finding a general verdict, and then only when so instructed by the court, upon the request of one or both the parties. The submission of interrogatories to the jury is a judicial act, and the record ought in some way to show affirmatively that the interrogatories were submitted to the jury in the manner and under the circumstances contemplated by the statute, before any question can be made upon such interrogatories in the supreme court.” ■. ..
In 91 Ind., 252 (Taylor v. Burk, Ex’r.), reading from the syllabus:
“There is no error in the court’s refusal to propound an interrogatory to the jury, at the request of a party, when such request is absolute and unconditional, and not in the event they render a general verdict.”
With those authorities in mind, let us look at the bill of exceptions and see what occurred upon the trial of the case at bar. The first mention that seems to have been made of the interrogatoires is by the court. ' The court says:
“With regard to the questions of the special verdict, I would say that I have given them such atiention as I have been able to in the short time allowed me. While I think under the law they are handed up to the court in time, yet they should have been handed up a little before they were handed up. I am also of the opinion that a portion of them *364 are improper questions to submit, and they being asked for as a whole and attached together, I must refuse to submit them as a whole. There are certain questions there that, if they had been handed up detached, I would submit to the jury, or if they are hereafter detached and broken up, I will instruct the jury upon them and have them answered. Exceptions by Mr. James.”
It is then noted that the “special verdict, marked S, V, as hereinafter shown and attached as part hereof,” was made a part of the bill of exceptions. It seems that after the jury were sent out, the court again called attention to these interrogatories, as shown in the record; to-wit:
“Immediately after the jury had retired the court said to counsel for defense that the special questions and answers might be cut apart, and that he would submit certain ones as being pertinent and proper. That it was not too late to call the jury back and give them further instructions as to the special verdict; and thereupon counsel for the defense explained to the court that the questions were prepared very early in the case and before he knew fully what would be the special claim of the plaintiff, and while he thought that ¿he first two questions were perhaps not important in view ,of the claims made upon the trial and argument, yet he .deemed the entire list of questions pertinent and proper,and that he desired to have them all answered, and desired to have them all submitted as proper; that he preferred to have them all given, or none, and proposed to stand or fall on the .list as a whole, and saved his exception.”
It does not appear, except by implication, that the court ■was requested to submit these interrogatories at all — that is •,to say, it does not appear except by the language of the .court after the jury had gone out.
It appears that certain interrogatories had, in some way or other, gone into the hands of the court, and the court made certain 'remarks in reference to them, and announced his decision to not send them all to the jury,and Mr, James excepted, from which it is implied that Mr. James,who was *365 counsel for defendant below, desired to have the interrogatories submitted. That is the only way it appears. That is scarcely sufficient to make the failure of the court to send these interrogatories in, reversible error. Every presumption is in favor of the absence of error. Prejudical error must appear affirmatively. We think we should follow the Indiana decisions above referred to. The court was not requested to submit these interrogatories to be answered in case a general verdict was returned. We may say that it appears by fair inference or implication, that there was a request to send these interrogatories to the jury, but it cannot be said — there is nothing to justify us in saying — that the request was that these interrogatories should be answered in the event that the jury should return a general verdict; and we hold, that it is not improper upon the part of the court to refuse to send in even proper interrogátories, unless the request is]coupled with this condition. But the court is not bound to submit improper interrogatories. It appears by what occurred after the jury-retired, that a series of interrogatories had been submitted, with a request that all should be submitted to the juyy, or none. We are clear that if there were any of these interrogatories — any one or more of the series — which should not have been submitted to the jury, or that the court was not bound to submit to the jury, that that would justify the court in declining to submit any — under the circumstances.
It is argued|that the court, notwithstanding this request of counsel, should have passed upon the interrogatories and decided which were proper and which were improper, and should have given^to the jury those which it deemed proper; but we do not agree with this-view. We do not think the court was bound to sift the wheat from the chaff, and especially in view of the request of counsel that all should be given, or none. The rule as to requests to charge the jury, to the effect jthat if some of a series of connected prop *366 ositions are bad, it is not error to refuse the whole (19 Ohio Reports, 337); and that,if a charge is asked as an entirety, and part of it is unsound,it is not error to refuse the whole, involves a principle that applies in its logic to interrogatories,since the action of the court in each case has to do with guiding the jury to proper conclusions, and therefore, a similar rule should be applied. Confusing or misleading the jury by the submission of improper questions in one case, may be as fatal to the ends of justice, as confusing or misleading it by improper instructions in the other.
In support of what I have said, to the effect that the court is not bound to submit interrogatories which are improper, I cite Thompson on Trials, sec. 2681, which reads as follows:
“Many loose questions are often submitted to a jury which can have no effect upon the general verdict, which ever way it may be returned. The object of these special findings is, not only to secure a more useful and minute examination of the component parts necessary to a general verdict, but either to confirm or antagonize that verdict, which ever way it may be returned. An interrogatory, therefore, the answer to which will in no way control the general verdict, should not be submitted. They should be limited to material and controverted questions of fact. Each question submitted should be limited to a single, direct and material controverted issue or fact, and in such a way that the answer will necessarily be positive, direct and intelligible. Facts not put in issue by the pleadings, need not be found. It is no objection to a question that it is leading; it is rather to be desired. The form should be such that it can be answered positively. The particular form in which it shall go to the jury, is always under the control of the court, and it is not bound to submit one in the exact from requested. ”
In support of these different propositions a great many authorities are cited, chiefly from the Indiana Reports, to-wit:
27 Ind,, 400: “Where the questions propounded require *367 the jury to find the evidence, rather than facts, or where they relate to matters having no material bearing upon the rights of the parties, the court may refuse to submit them to the jury.”
108 Ind., 481: “It is not proper to submit to the jury interrogatories which merely, call for an expression of opinion upon a question of law involved in the case, nor interrogatories the answers to which can have no influence on the general verdict.”
85 Ind., 33: ‘‘It is not error to refuse to submit to the jury an interrogatory as to a question of fact not involved in the issues, or as to a question of law. ”
Certain of the interrogatories which were not submitted, because of the refusal of the court to. submit, and of which complaint is made, read as follows:
“1. Do you find that there was any negligence on the part of the defendant in locating the well, with the boiler and engine to generate power therefor, at the point on the Bonawit farm where it was located?”
That is entirely immaterial: it is not claimed or contended that there was any negligence on the part of defendant in locating the well, boiler or engine.
‘‘2. Was it negligent for the defendant to burn wood in Its boiler in the drilling of such well?”
It is questionable whether that should have been submitted, because it was the burning of the wood with the high wind prevailing, and other circumstances, which were alleged to have been negligence.
And so as to the spark-arrester, in the third question.
“6. From the circumstances surrounding the premises and as shown by the evidence to exist at that place at that time, might not the fire have originated from some other source?”
Now, clearly,the court was not required to submit to the jury a question which would oblige the jury to speculate upon how this fire might have originated in some other way *368 than that which the testimony shows. The question for-the jury was whether or not the fire was communicated from this boiler? Having decided that, either affirmatively or negatively, that was all they were required to decide upon that subject.
James & Beverstoclc, for Plaintiff in Error.
Potter & Emery, for Defendant in Error.
The next question is: “If not,why not?’
Because of these questions, which the court was not bound to submit to the jury,and should not have submitted to the jury, as well as because the interrogatories were not submitted with the request that they be answered in the event that a general verdict should be returned, we hold that the court did not err in refusing to submit these interrogatories to the jury, even though some of the questions-were proper,and, if submitted alone, with a proper request,, should have gone to the jury.
The judgment is affirmed.