The Louisville, New Albany and Chicago Railway Company v. Pedigo.

Filed Dec. 16, 1886.

———◆———

No. 12,520.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. PEDIGO.

NEGLIGENCE.—*Railroad.*—*Defective Bridge.*—*Evidence.*—*Rate of Speed.*—*Res Gestæ.*—*Pleading.*—Where, in a complaint against a railroad company to recover for personal injuries sustained by the breaking down of a bridge, it is alleged that at the time of the accident it was wholly unsafe and dangerous to run a train over such bridge on account of its bad condition, by reason of its defective construction and the negligent manner in which repairs were being made, evidence as to the rate of speed at which the train was being run is admissible as part of the *res gestæ.*

SAME.—*Breaking Down of Bridge While Being Repaired.*—*Presumption of Negligence.*—*Rebuttal.*—*Appliances for Making Repairs.*—*Degree of Care Required.* —Where a bridge, which is being repaired, breaks down while a train laden with passengers is passing over it, in an action by a passenger for an injury thereby sustained, it is not sufficient to rebut the presumption of negligence for the carrier to show that it was using the means and appliances ordinarily employed by prudent persons in making such repairs, without also showing that they are ordinarily sufficient, and that they were without known or discoverable defect, and were used with the utmost practical care and diligence.

SAME.—*Interrogatories to Jury.*—It is not proper to submit to the jury interrogatories which merely call for an expression of opinion upon a question of law involved in the case, nor interrogatories the answers to which can have no influence on the general verdict.

VERDICT.— *Excessive Damages.*— *Supreme Court.*— *Practice.*—The Supreme

Court will not disturb a verdict as to the amount of damages assessed, on the ground that they are excessive, where it does not appear that the jury must have acted from prejudice, partiality, or other improper motive.

From the Marion Superior Court.

*G. W. Easley, G. R. Eldridge* and *W. Irvin*, for appellant.

*F. M. Charlton, T. W. Lockhart, J. O. Pedigo, F. J. Van Vorhis* and *W. W. Spencer*, for appellee.

MITCHELL, J.—This action was brought by Pedigo against the railway company to recover damages for personal injuries alleged to have been suffered by him on January 31st, 1884, at Broad Ripple, near the city of Indianapolis, while being carried as a passenger on one of the company's trains.

The injury is alleged to have been sustained without the plaintiff's fault, by the breaking down of a railway bridge, negligently maintained by the company over White river. In consequence of the fall of the bridge, the car in which the plaintiff was seated was thrown into the river below.

The plaintiff had judgment in the court below for $4,500. A reversal of this judgment is now asked upon various errors assigned.

In the order in which the questions have been presented, the first ground upon which a reversal is asked involves a ruling of the court in admitting certain testimony concerning the rate of speed at which the train was proceeding when the disaster occurred.

The conductor of the train, having been examined as a witness on behalf of the defendant, was asked on cross-examination the following question: "How fast was the train running when it struck the bridge?" Over objection he was permitted to give the following answer: "From fifteen to eighteen miles an hour."

Another witness, who was engaged in making repairs to the bridge at the time it fell, having testified on the defendant's behalf, was asked on cross-examination whether he had

not said to a person named, at a time and place mentioned, that the supports which held the bridge when the train came upon it would have been sufficient but for the high rate of speed at which the train was going. The witness answered, over objection : " I might have told him that ; * * I said that I believed the train was running faster than it ought to over the bridge."

The appellant's argument is, that as there was no allegation in the complaint that the train was run at a negligent rate of speed, the admitted evidence was outside of any issue in the case, and that hence the ruling was both erroneous and hurtful.

This view of the question is not tenable. While the complaint contains no such allegation as that referred to, it is charged therein that at the time the train ran on to the bridge it was " wholly and entirely unsafe and dangerous to run an engine and train over the same," on account of its insecure and defective condition, growing out of defects in its original construction, and because of the negligent and unskilful manner in which repairs upon it were being prosecuted.

The issue thus tendered made any evidence relating to the condition of the bridge at the time it fell, the manner in which it was supported during the process of repairment then going on, the weight of the train and the speed at which it was being run, competent as part of the *res gestæ.*

If, owing to the condition of the bridge, it was dangerous to run an engine and train upon it at all, it might evince a degree of negligence bordering upon recklessness if the train was run upon it at such a rate of speed as to multiply the probabilities that the bridge would fall.

If the bridge was not supported while undergoing repairs so as to sustain the weight of the train, at the rate of speed at which the company saw fit to run it, the company was negligent in the maintenance of. its bridge. Grant that trains must be run over bridges while they are undergoing repairs, the duty of the company, nevertheless, is to so adjust the

bridge and regulate the speed of overpassing trains, as that the lives of passengers will not be put in peril.

The next ground upon which a reversal is asked is, that the court below refused to submit to the jury the sixth, seventh, eighth and ninth special interrogatories propounded by the appellant.   These were as follows :

"Interrogatory No. 6.   Do you find from the evidence that the employees of said defendant, engaged in putting thimbles or tubes into the chords of said bridge, were negligent in the means used or process of putting such tubes or thimbles in the bridge ?

"Interrogatory No. 7.   If your answer to interrogatory No. 6 is yea, in what did the negligence consist?

"Interrogatory No. 8.   Do you find from the evidence that the employees of defendant, engaged in putting thimbles or tubes in the chords of the bridge, used the same means, appliances and mode that are ordinarily used by other railway companies in doing like work under like circumstances ?

"Interrogatory No. 9.   If you answer interrogatory No. 8 in the negative, state from the evidence what difference there was in the means, appliances or mode used by the defendant and other railway companies doing like work under like circumstances."

The ruling of the court in rejecting the foregoing interrogatories was correct.

The sixth and seventh were nothing more nor less than an invitation to the jury to express an opinion upon a question of law involved in the case.   That it was not their function to do this, has been determined in a number of cases.   *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186; *Toledo, etc., R. W. Co.* v. *Goddard,* 25 Ind. 185; *Woolery* v. *Louisville, etc., R. W. Co.*, 107 Ind. 381, and cases cited.

Such questions of fact, if any there be, as are included in the eighth and ninth interrogatories, are so intermixed with assumptions and other matters, to which an answer would be

nothing more than a conclusion of an uncertain character, as renders the propriety of the ruling of the court manifest.

It was of no consequence whether the appellant used the means and appliances ordinarily used by other railway companies under like circumstances or not, provided they were used in such a manner' as 'to render the bridge unsafe when the train came upon it, at the rate of speed shown in this case. Means and appliances for repairing railway bridges which are so employed as, that when a train load of passengers comes upon a bridge undergoing repairs, both train and passengers are precipitated into the river below, are either so manifestly insufficient, or are being so unskilfully used, as that, without showing some other cause for the disaster, against which the highest degree of practical skill and foresight could not have guarded, the company is liable to the imputation of negligence.

When an accident happens, such as that from which the alleged injury resulted, it is not sufficient to rebut the presumption of negligence which the law raises in favor of a passenger, that the carrier is able to show that it was using the means and appliances ordinarily employed, without also showing that such means and appliances are ordinarily sufficient for the purpose, and that they were without known or discoverable defect and were used used in a proper and skilful manner.

However the interrogatories under consideration might have been answered, the answers could have had no influence on the general verdict. Whenever it is apparent that such will be the effect of answers, it is not only proper, but it is the duty of the court trying the cause, to reject interrogatories which invite such answers.

Among other instructions requested by the appellant and refused by the court, the sixth was to the effect that the law does not require of railway companies the utmost degree of care which the mind can conceive or imagine, or that they should be regarded as guarantors or insurers of the safety of

passengers, or of the sufficiency of their roadways, bridges and appliances, but that the observance of the degree of care exercised by reasonably cautious persons engaged in like service under like circumstances filled the measure of their obligation. The instruction proceeded further to state, in effect, that if the jury believed that the means and appliances which were being used in repairing the bridge at the time of the disaster, were the same as those used by reasonably prudent persons engaged in like work, under like circumstances, then the defendant could not be found guilty of negligence, and the jury should return a verdict for the defendant.

It is contended that this instruction is within the rule announced in *Cleveland, etc., R. R. Co.* v. *Newell,* 104 Ind. 264 (54 Am. R. 312).

Speaking of the duty which the law imposes upon a railway, in respect to the maintenance of its tracks, etc., in the case cited we said : " While its obligation does not rise to the degree of warranting the safety of its track and roadway, the law nevertheless exacts that when an injury occurs to a passenger by an occurrence so unusual and so perilous of human life, it shall make it appear that the utmost practical care and diligence had been observed, and that no degree of care usually and practically applicable to the careful management of like railways would have discovered the defect which probably caused the accident, and thus prevented its occurrence."

Conceding the substantial accuracy of so much of the instruction asked as defines the obligation of a railway company, in respect to its not being required to observe a merely speculative or imaginary degree of caution, or to insure either the safety of passengers, or the sufficiency of its bridges, that part of it upon which the jury were asked to predicate a verdict for the defendant, falls immeasurably short of the rule announced in the case relied on.

It was, not sufficient that the appellant may have used proper means and appliances in the repair of its bridge. The

necessity of the case required it to show that in the use of those means "the utmost practical care and diligence had been observed, and that no degree of care usually and practically applicable" to the work about which it was engaged, would have discovered the probable cause of the disaster and prevented its occurrence. The instruction was properly refused.

In the fifth instruction given by the court, the jury were directed, in substance, that if they should find from the evidence, that while the railroad company's bridge over White River was undergoing repairs, its servants caused the train on which the plaintiff was a passenger to be drawn upon the bridge, and the injury to the plaintiff occurred without fault on his part by reason of the bridge giving way, and causing the car in which plaintiff was seated to fall through, their verdict should be for the plaintiff, unless they should further find from the evidence, that in making the repairs the defendant's servants exercised the "skill, care and prudence which skilled, cautious and prudent persons would and ought to use," in order to have the bridge in a condition of safety for the passage of trains, and that it "was not guilty of the slightest neglect in the use of proper and suitable means and appliances to protect said bridge and prevent its giving way or breaking down."

The objections made to this instruction relate more to the aptness of the language employed by the court than to the propriety of the principles announced. The law was, however, stated with substantial accuracy in a manner to be clearly comprehended by the jury.

Within the ruling in cases closely analogous, there was no error in giving the instruction complained of. *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 551, and cases cited; *Cleveland, etc., R. R. Co.* v. *Newell, supra; Louisville, etc., R. W. Co.* v. *Thompson*, 107 Ind. 442.

The only other question, presented in such manner as to

require notice, relates to the amount of damages assessed. It is insisted that the amount is excessive.

As, however, nothing appears to induce the belief that the jury must have acted from prejudice, partiality or other improper motive in the assessment of damages, we can not disturb their verdict. It was their exclusive province to determine the amount of compensation to be awarded for the injury sustained by the plaintiff, and having determined it so far as we can judge, upon the evidence, without the intervention of improper motives, the court can not interfere. Ohio, etc., R. W. Co. v. Collarn, 73 Ind. 261 (38 Am. R. 134).

Judgment affirmed with costs.

Filed Oct. 12, 1886; petition for a rehearing overruled Dec. 16, 1886.