JACKMAN CIGAR MANUFACTURING COMPANY *v.* JOHN BERGER & SON COMPANY ET AL.

[No. 16,950. Filed January 12, 1944. Rehearing denied February 7, 1944.]

438

440

*Bamberger & Feibleman* and *Alan W. Boyd,* all of Indianapolis, for appellant.

*Clifford Ellig* and *Oliver G. Bailey,* both of Cincinnati, Ohio, and *Earl F. Gruber,* of Frankfort, for appellees.

DRAPER, J.—This is an action by the appellee, The John Berger & Son Company, hereafter called Berger Co., to foreclose a mortgage covering real estate and personal property executed by appellee N. N. Smith Company, hereafter called Smith Co., and to recover any deficiency against appellant. The appellee Clinton County Bank and Trust Company, trustee under the mortgage, having refused to bring an action to foreclose it, was made a party defendant and is hereafter called the bank.

The court found the facts specially and stated its conclusions of law thereon in favor of appellee Berger Co., and entered a personal judgment in its favor and against appellant and appellee Smith Co. for $147,428.36, for a foreclosure of the mortgage and the sale of the mortgaged property, the deficiency, if any, to be levied on the property of Smith Co. and appellant. The appellant here challenges the personal judgment against it. No question has been raised regarding the foreclosure of the mortgage and that feature of the case will not be discussed.

The appellant questions certain of the court's conclusions of law and in its motion for new trial asserts that the decision of the court is not sustained by sufficient evidence and is contrary to law.

Berger Co. insists that neither cause for new trial presents any question for the reason that all of the evidence is not in the record. The determination of the asserted causes for new trial does require a consideration of all of the evidence given in the cause, and even though the bill of exceptions purports to contain all of the evidence, yet if it shows on its face that it does not, the sufficiency of the evidence may not be considered by this court. *Weaver et al.* v. *Kennedy* (1895), 142 Ind. 440, 41 N. E. 810; *Noerr, Administratrix* v. *Schmidt, Trustee, et al.* (1898), 151 Ind. 579, 51 N. E. 332; *Thorne* v. *Indianapolis Abattoir Co.* (1899), 152 Ind. 317, 52 N. E. 147.

The transcript and assignment of errors was filed in this court on April 2, 1942, the appellant's brief on May 1, 1942, and the appellee's brief, in which attention is called to the fact that a large number of exhibits and a deposition are not contained in the bill of exceptions containing the evidence, was filed on July 30, 1942. On December 19, 1942, the appellant procured the entry of an order in the trial court whereby the bill of exceptions was corrected *nunc pro tunc* to include therein the deposition and copies of each of the original exhibits. On February 19, 1943, this court granted appellant's petition for a writ of *certiorari*, whereby said bill of exceptions was ordered to be amended and corrected in accordance with the entry *nunc pro tunc*, and the clerk of the trial court was directed to certify it as corrected to this court. On November 30, 1943, when this cause was argued orally in this court, no return to said writ of *certiorari* had

been made, and none was ever made until December 11, 1943, when the clerk of the trial court made return to the effect that he could not comply with the order of this court because of the failure of the appellant to furnish him with copies of the exhibits specified in the *nunc pro tunc* order above referred to. No other return to said writ was ever made, nor have said deposition or copies of said exhibits ever been filed in or certified to this court as a part of the bill of exceptions containing the evidence. On December 16, 1943, seventeen months after its attention was called to the deficiencies in the bill of exceptions, ten months after the issuance of the writ of *certiorari* and after the cause had been fully briefed and argued, the appellant filed its petition for an alias writ of *certiorari*, asking us to permit the inclusion of original exhibits instead of copies thereof in the bill of exceptions. "It is the duty of the party obtaining an order for a *certiorari*, to use due diligence in having the writ issued and delivered to the clerk of the Court below, and in having a complete record made out and transmitted to the clerk of this Court." *Bannister* v. *Allen* (1825), 1 Blackford 414. The allegations of the petition for alias writ of *certiorari* are controverted by Berger Co., and we have concluded that the record in this case shows an utter lack of the diligence required of the appellant. We, therefore, hold that all of the evidence is not in the record and that the overruling of appellant's motion for new trial presents no question.

From the special findings it appears that Smith Co. on July 1, 1926, executed to the bank, as trustee, its certain mortgage covering its factory buildings in Frankfort and Lebanon, the machinery, equipment and tools used in the manufacturing of cigars in said buildings, and the trade names and good will of the business

operated in said plants, to secure nineteen bearer bonds, each for the principal sum of $10,000.00, payable with interest every six months commencing January 1, 1927, and that Berger Co. since January 1, 1930, has been the owner and holder of all of the outstanding bonds secured by said mortgage.

That on December 6, 1930, eleven of the bonds remained unpaid, and Smith Co. executed to the appellant a conditional sale agreement covering a part of the mortgaged property, consisting of certain machinery, equipment, inventories, trade names and good will of the Frankfort factory, all of which, with the exception of inventories, was covered by the mortgage and was sold subject thereto. The bond due January 1, 1931, was to be and was paid by Smith Co. The consideration for the sale of the property mentioned was $105,917.71 of which $5,917.71 was to be and was paid in cash by appellant, and the balance of $100,000.00 "the second party (appellant) does hereby assume and agree to pay as a part of the purchase price of the property . . . together with all interest thereon from and after January 1, 1931." Title was to remain in Smith Co. until the "whole . . . of said bond issue shall be paid in full according to its terms and the property covered by the same shall be discharged from all liability on account thereof. Said second party (appellant) does hereby expressly agree to pay said $100,000.00 of said bond issue in all things in accordance with the terms of the bonds representing said indebtedness and the mortgage securing the same . . .," and in event of the failure of appellant to pay, all of his rights in said property "shall at once terminate . . . and first party (Smith Co.) shall have the right to . . . take possession thereof . . . and shall retain any and all payments theretofore made as compensation

for the use of such property prior to default." The contract further provided that the collection of any payment due on the purchase price by suit, should not constitute a waiver of the rights of Smith Co. to retake said property for any subsequent default in payment. Of even date, one Duys in writing guaranteed the payment of the sums to be paid by appellant, promptly as the same became due. On or about December 8, 1930, Berger Co. was informed of the execution of said agreement and made no objection thereto, and the appellant took and commenced the operation of the business.

That prior to August 4, 1931, Berger Co. accepted and assented to the assumption by the appellant of the debt secured by the mortgage, and that the appellant had notice and knowledge of that fact on and prior to November 11, 1931, when, the business being unprofitable to appellant, it did without knowledge, assent or waiver on the part of Berger Co., enter into a written agreement with Smith Co. and Duys whereby appellant re-sold to Smith Co. all right, title and interest in the property obtained by the agreement of December 6, 1930, subject to the mortgage, together with certain inventories and items not covered by the mortgage, in consideration of the surrender to Smith Co. of certain of its stock held by Duys and the assumption by appellant of a certain debt due from Smith Co. to H. Duys & Co. Inc. and the cancellation of certain leases, and Smith Co. did thereby release and discharge appellant from all liability on the mortgage and bonds and Duys from his agreement of December 6, 1930, and did further agree to save appellant and Duys harmless on account of the appellant's assumption and agreement to pay said mortgage and bonds, contained in said contract, and Duys agreement endorsed thereon. For the

purposes of this opinion we adopt appellant's contention that the November agreement amounted to a recission of the December agreement.

The appellant first contends that the agreement to pay the bonds was not intended to be for the benefit of Berger Co., and it had no right of action thereon.

Whatever was the ancient law with respect to the rights of a third party to enforce a contract between others, made for his benefit, it is now the settled law of this jurisdiction that a stranger to the contract and the consideration may maintain a suit to enforce such an agreement when it clearly appears that it was the purpose, or a purpose, of the contract to impose an obligation on one of the contracting parties in favor of such third party. It is not enough that the performance of such a contract would be beneficial to such third party. To confer upon him the right to maintain an action based upon it, it must appear that it was the intention of one of the parties to it to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligations thus imposed. *Reed et al.* v. *Adams Steel and Wire Works et al.* (1914), 57 Ind. App. 259, 106 N. E. 882. Such an intention must clearly appear from the terms of the contract itself, *E. I. DuPont DeNemours and Company, Incorporated,* v. *Ferguson* (1927), 86 Ind. App. 429, 158 N. E. 488, and the question of the intention of the contracting parties, as distinguished from their motives, which are not controlling, should be gathered from the terms of the contract itself, considered in its entirety against the background of the circumstances known to and shown to surround the contracting parties at the time of its execution, *Woodhead Lumber Co.* v. *E. G. Niemann Investments* (1929),

278 P. 913, 99 Cal. A. 456; *Hay* v. *Hassett* (1916), 174 Iowa 601, 156 N. W. 734; *E. Nelson Mfg. & Lumber Co.* v. *Roddy* (1930), Texas, 34 S. W. (2d) 624; and see *Whicker* v. *Hushaw* (1902), 159 Ind . 1, 64 N. E. 460, and if, when so considered, the terms of the agreement evinces an intention to benefit third parties, their right to recover under it must be granted, but if inconsistent therewith, must be denied. *Fosmire v. National Surety Co.* (1920), 229 N. Y. 44, 127 N. E. 472.

The appellant says that an intention to benefit Berger Co. is plainly inconsistent with the terms of the instrument for the reason that if such an intention is found, the appellee Smith Co. would be deprived of valuable rights which the contract must otherwise be held to reserve to it, such as said appellee's right, upon default in payment of an installment, to elect between retaking the property or suing for the balance due, and it has been considered that the reservation of rights wholly inconsistent with the idea of an intended benefit to a third person may show that the agreement in which they were reserved was not intended to inure to the benefit of the third party. *Garnsey* v. *Rogers* (1872), 47 N. Y. 233.

This is undoubtedly valid as a rule of construction, but since people usually contract with their own welfare in mind, this rule cannot be taken to mean that an intention to benefit others can only exist if such intention, when translated into performance, would in no way result detrimentally to the best interests of the contracting parties, for parties are presumed to intend the natural and probable consequences of an agreement voluntarily, knowingly and freely made by them, particularly where, as here, all parties concerned are business men of long and varied experience in the business concerning which they are contracting. The rule of

construction referred to cannot mean that the courts must rescue a party from the consequences of a bargain actually and on its face made with the intent to benefit one not a party to it, simply because it has developed that it would not be convenient or profitable for the contracting party to perform it, nor does it follow, because by the terms of a contract a party to it makes important commitments or surrenders valuable advantages, that he could not have intended the consequences of his own plain and unequivocal language. It is also worthy of note that such rights as were surrendered were not surrendered by the appellant, who is complaining, but by the appellee who is not, and were not surrendered by the terms of the contract but in event of a default thereof by appellant.

The distinction between motive and intention is a clear one, *Ochs* v. *M. J. Carnahan Co.* (1908), 42 Ind. App. 157, 76 N. E. 788, 80 N. E. 163, and must be kept in mind in the consideration of the present question. It may well be that the end result desired by the contracting parties in this case was an advantage to themselves. Their motive may have been, and probably was, to advance their own interests, without any desire or purpose to confer any particular benefit on Berger Co., but the "intent" which is necessary to the third party's right to sue is "not a desire or purpose to confer a particular benefit upon him," nor a desire to advance his interests or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him, as was the case here. *Byram Lumber & Supply Co.* v. *Page* (1929), 109 Conn. 256, 146 A. 293. If by the terms of the contract the performance of it must necessarily, and within the contemplation of the parties, result in

a direct benefit to the third party, and the promisor himself has a legal interest in performance in favor of the third party, the contract and the parties thereto intend a benefit to such third person. *Durnherr* v. *Rau* (1892), 135 N. Y. 219, 32 N. E. 49.

We are clearly of the opinion that the contract does show that it was intended to be for the benefit of Berger Co. within the meaning of the law and we are fortified in this belief when we consider the circumstances surrounding the parties at the time it was made. The findings disclose that the greater portion of the property sold was mortgaged property, that the mortgage forbade its consolidation or merger with the property of any other corporation, and the court found that such mortgaged property was sold and was merged with the property of appellant. It seems to us not unlikely that the contracting parties felt that they must offer the Berger Co. the inducement of the addition of the appellant as a debtor, so that it would not undertake to prevent the consummation of the transaction, and Berger Co., having knowledge of the facts, did not in fact undertake to do so.

It is next contended that even though the agreement be held to create an obligation to Berger Co., the parties thereto had the unrestricted right to release and discharge it so as to terminate any responsibility of appellant to Berger Co., the appellant asserting the law to be that until a third party creditor beneficiary has adopted the contract, or has placed himself in reliance thereon in a position from which he cannot retreat without loss which would not have been suffered except for such reliance, any discharge or variation of the contract by the parties thereto will be binding upon him, and the appellant asserts that Ber-

ger Co. neither so adopted the contract nor changed its position to its detriment.

It appears from the court's findings that the appellant knew that Berger Co. was the owner of all of the bonds and it inquired of Berger Co. where the same should be paid; and within a few days paid at the bank the bond next maturing and then due, which payment Berger Co. received from the bank, and appellant notified Berger Co. of the payment; and in answer to an inquiry by Berger Co., advised it that it did not intend to pay the entire balance at that time. The appellant complained to Berger Co. of the refusal of the bank to forward the cancelled bond which it had paid, and advised Berger Co. that if it was to be harassed by Smith Co. and the bank, it would require the bonds to be placed for collection in some trust company or bank in Cincinnati or with the plaintiff. The bank later forwarded the cancelled bond to the appellant, and Berger Co., after taking the matter up with the bank, advised appellant of the fact that the bond had been forwarded, and informed appellant that no further trouble in connection with the surrender of the cancelled bonds was anticipated, and the court found as a fact that Berger Co. accepted and assented to the assumption by appellant of the debt secured by said mortgage.

It further appears from the findings that when appellant purchased the property it was a competitor of Smith Co. in the five-cent cigar field. It at once commenced to manufacture the "Bankable" cigar in the Frankfort plant and advertised and sold them under that name, but changed the shape of the cigar and removed the flavor. That the trade name "Bankable" which was one of the assets mortgaged and sold, and had been and was of great value, and the continuance

of that value depended upon the character of the operation of the business, and by changing the cigar the value of the good will of the business was impaired by appellant, and the business was killed by said operation, and after the transactions herein recited, the manufacture of that or any other cigar in that plant was discontinued, and the going business whose properties and belongings had been mortgaged to appellant ceased to exist.

We agree with appellant's general statement of the rule, but we cannot agree with its application of that rule to the facts in this case. It may be conceded that neither a request for payment, nor payment, whether of principal or interest, standing alone, constitutes adoption or evidence thereof, and that before a creditor beneficiary may be said to have adopted a contract for his benefit he must give notice that he accepts the terms of it, but such acceptance need not be formal or express, and it seems to us that in this case Berger Co. by its acceptance of payment of one installment, with interest, in connection with the other circumstances stated, did sufficiently indicate to appellant that it had elected to look to appellant for payment in accordance with the terms of the agreement, and would cooperate to make the manner and place of payment convenient to appellant, and that it expected appellant to pay, but we need not base our decision on this ground alone for it further appears to us that by its reliance upon appellant's assumption of the debt, Berger Co. was relegated to a position from which it could not retreat without loss which it would not have suffered except for such reliance.

The appellant contends that since the agreement in question was executory and conditional, the parties to

it could terminate by agreement any obligation of appellant under it even if it were intended to be for Berger Co.'s. benefit and had been adopted by Berger Co. prior to such termination. It was held in the case of *Harvey* v. *Lowry* (1932), 204 Ind. 93, 183 N. E. 309, that a grantee, who, as a part consideration for a conveyance of real estate, assumes and agrees to discharge a lien upon the land conveyed to him, becomes personally liable to the holder of the lien, and the same rule has been recognized in connection with the assumption of the debt secured by a chattel mortgage on personal property. *Long* v. *Patton et al.* (1906), 43 Texas Civil Appeals 11, 93 S. W. 519. In the case of *Whicker* v. *Hushaw et al.* (1902), 159 Ind. 1, 4, 64 N. E. 460, while the facts were admittedly different than those in this case, the court in its discussion of the subject under consideration makes the statement that ". . . the mere fact that the assumption of a mortgage indebtedness is in an executory contract will not prevent the person holding the mortgage from availing himself of it while it yet remains the agreement of the vendor and the vendee." We have seen no case directly involving conditional sales of property, but it must be admitted that many cases put the right of the third party beneficiary in "assumption of debt at time of conveyance" cases upon the ground that an absolute conveyance of property being unconditional and irrevocable by the grantor, and the promise or undertaking of the vendee not being subject to retraction, the vendee has in his possession and under his control a primary fund which in equity belongs to the third person beneficiary, and of course in the case of a conditional sale, such is not the situation. Yet the vendee has it within his exclusive power, by complying with his contract, to acquire the title to the property and thus acquire the

fund, and in this case agreed to do so, but voluntarily rescinded, and upon this promise Berger Co. relied to its damage. Under the decree in this case not only the property covered by the conditional sale agreement, but all of the mortgaged property will first be exhausted for the payment of the debt, and upon the whole record we are of the opinion that the recission came too late, and that the judgment of the trial court was right.

In our decision of this case we are not unmindful of the fact that in an action brought by Berger Co. against Duys to recover upon Duys' guaranty agreement, an official referee of the Supreme Court of the State of New York held in a written opinion that Duys' guaranty agreement was not made or intended for the benefit of Berger Co., and that it had neither adopted the guaranty or so changed its position as that it would be inequitable to release Duys from his guaranty as was attempted by the November agreement. It may be that under the facts as proven in that case the decision was right. No reasons are given in the opinion for the referee's conclusions and to the extent, if at all, that the case is an authority here, we are unwilling to be influenced by it. See *John Berger & Son Co.* v. *Duys et al.* (1940), 22 N. Y. Supp. (2d), 470, 174 Misc. 976, affirmed 261 App. Div. 961, leave to appeal denied by Court of Appeals, 285 N. Y. 855.

Within the time for filing its motion for new trial the appellant filed its "Supplemental Motion for New Trial" which asserts the discovery of new evidence ▮ which would, upon another trial of the cause, change the result thereof, and the overruling of this motion is claimed to be reversible error. However, the evidence heard on the original trial not being before this court, no question is presented by this ruling. *Ruddick's Adm'r.* v. *Ruddick's Adm'r.* (1863), 21

Ind. 163, *Cooper* v. *Bartlett et al.* (1898), 150 Ind. 693, 49 N. E. 827.

Finding no error, judgment is affirmed.

Flanagan, J., not participating.

NOTE—Reported in 52 N. E. (2d) 363.