**REAL ESTATE SUPPORT SERVICES, INC., Appellant–Defendant Below,**

v.

**Paul and Norma NAUMAN, Appellees–Plaintiffs Below.**

No. 67A01–9404–CV–127.

Court of Appeals of Indiana, First District.

Dec. 27, 1994.

Rehearing Denied March 6, 1995.

John B. Drummy, Laura E. Moenning, Kightlinger & Gray, Indianapolis, for appellant.

Robert J. Lowe, Greencastle, for appellees.

ROBERTSON, Judge.

Real Estate Support Services (RESS) resists an adverse judgment in favor of Paul and Norma Nauman in their lawsuit for damages from a failure to discover defects in their house. On appeal, RESS raises the following issues:

I. Whether the conclusion of the Trial Court that Plaintiffs were third party beneficiaries of the contract between Defendant Real Estate Support Services and Coldwell Banker Relocation Services, and the judgment in favor of Plaintiffs based upon that conclusion, are clearly erroneous since the evidence does not indicate a clear intent on the part of the contracting parties to render a direct benefit to the Plaintiffs?

II. Assuming that the Plaintiffs were third party beneficiaries of the contract, whether the damages awarded were excessive to remedy defects that were discoverable by properly performing the duty imposed by the contract?

We affirm.

The evidence reveals that RESS entered into a contract with Coldwell Banker Relocation Services, Inc. to provide home inspection services. Pursuant to the contract, RESS inspected a house in Greencastle, Indiana, and generated an inspection report. The report states the following as the OBJECTIVE OF THE RELOCATION HOME INSPECTION REPORT:

> To provide the client with a report of a relocating employee's home, consisting of a series of visual inspection of items contained in pages 1 through 5 of this form, which the client may, at its discretion, disclose to other interested parties.

The inspection report lists Coldwell Banker as the client. Approximately six months after the inspection, the Naumans received a copy of the report and then submitted an offer to buy the house. After they had submitted the offer, the agent for Coldwell Banker informed them that it would accept the offer if they accepted the inspection report. They did so and bought the house.

The Naumans subsequently discovered a defect in the chimney not mentioned in the inspection report. The report indicated the flue was acceptable. The Naumans then brought a claim against RESS for "[d]amages for replacing/repairing chimney and flue" which were "[c]aused when Plaintiffs justifiably relied upon Defendant's Home Inspection Report." After trial, in its FINDINGS OF FACT AND CONCLUSIONS OF LAW, the trial court determined:

> 4. That printed on the Report is the statement that the it can be disclosed to "other interested parties" which under any reasonable interpretation would include prospective buyers of the houses Coldwell had listed for which an inspection report had been prepared;
> 5. That [RESS] knew or should have known that Coldwell was likely to disclose the Report to prospective buyers—it is difficult to think of any person or group of persons who would be more interested in the Report than prospective buyers;

The trial court concluded that the Naumans were third party beneficiaries of the contract between RESS and Coldwell Banker and awarded them damages for the negligent inspection.

■ Where a trial court enters special findings and conclusions sua sponte, this

Court will review the case as one decided on a general judgment with respect to any issue on which the court has not made a finding and will affirm that general judgment upon any legal theory supported by the evidence. *Fowler v. Campbell* (1993), Ind.App., 612 N.E.2d 596, 600. Special findings control only those issues which they cover, and they will not be set aside on appeal unless they are clearly erroneous. *Id.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon, and the findings of fact are clearly erroneous when the record is without facts or reasonable inferences to support them. *Id.*

I

RESS claims that, contrary to the conclusion of the trial court, the Naumans were not third party beneficiaries of the contract between RESS and Coldwell Banker. We quote fully from the following cases RESS cites but include the emphasis RESS places on certain words and phrases:

> Generally, only a party to a contract or those in privity with him have rights under the contract. *Gonzales v. Kil Nam Chun* (1984), Ind.App., 465 N.E.2d 727, 729. One not a party to the contract may directly enforce the contract as a third party beneficiary *only* if the contacting parties *clearly intended* to *directly* benefit him by *imposing a duty* in his favor. *Id.*

> It is not our purpose to hold that a contract may not be made for the benefit of a third person although such person may not be specifically mentioned, but we do hold that a contract, to have such effect, "must clearly evidence a distinct intention to benefit such third person." *Irwin's Bank v. Fletcher, etc., Trust Co., Rec.* (1924), 195 Ind. 669, 692, 145 N.E. 869, 876, *opinion on rehearing* (1925), 195 Ind. 669, 146 N.E. 909.

> [A] stranger to the contract and the consideration may maintain a suit to enforce such an agreement when it clearly appears that it was the purpose, or a purpose, of the contract to impose an obligation on one of the contracting parties in favor of such third party. It is not enough that the performance of such contract would be beneficial to such third party. To confer upon him the right to maintain an action based upon it, it must appear that it was the intention of one of the parties to it to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligations thus imposed. *Jackman Cigar Manufacturing Co. v. John Berger & Son Co.* (1944), 114 Ind.App. 437, 445, 52 N.E.2d 363, 367. "The 'intent' which is necessary to the third party's right to sue is 'not a desire or purpose to confer a particular benefit upon him,' nor a desire to advance his interests or promote his welfare, *but an intent that the promising party or parties shall assume a direct obligation to him.*" *Id.* 114 Ind.App. at 447, 52 N.E.2d at 367 (quoting *Byram Lumber & Supply Co. v. Page* (1929), 109 Conn. 256, 146 A. 293, 294).

> Finally, "a 'third party' does not gain the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor." *Harvey v. Lowry* (1932), 204 Ind. 93, 99, 183 N.E. 309, 311.

The Naumans claim they are third party beneficiaries of the contract because they are within the class of "other interested parties" mentioned in the inspection report's objective: to provide Coldwell Banker with a report which it may, "at its discretion, disclose to other interested parties." To the contrary, RESS contends that, while "other interested parties" may include prospective purchasers, the statement of objective is insufficient to indicate a clear intent on the part of RESS or Coldwell Banker to render a direct benefit to prospective purchasers like the Naumans.

### COLDWELL BANKER'S INTENTION

Our supreme court has adopted an opinion of this Court which cited the Restatement of Contracts § 133:

> (1) Where performance of a promise in a contract will benefit a person other than a promisee, that person is ...
>
>     (a) a donee[ ]beneficiary if it appears from the terms of the promise in view of

accompanying circumstances that the purpose of the promise[e] in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

(2) such a promise as is described ... is a gift promise ...

*In re Estate of Fanning* (1975), 263 Ind. 414, 418–419, 333 N.E.2d 80, 83 (adopting opinion published at 315 N.E.2d 718); Restatement of Contracts § 133 (1932) (see now Restatement (Second) of Contracts § 302(1)(b) (1981)).

■ Paul Nauman testified that Coldwell Banker had recommended to the Naumans' realtor that the Naumans accept the inspection report. After the Naumans had submitted their offer, Coldwell Banker informed them that it would accept the offer if they accepted the inspection report. Further, the inspection report states that Coldwell Banker may disclose it to other interested parties and a representative from RESS acknowledged at trial that an ultimate buyer of the inspected property is "certainly a very interested party." Also, Paul Nauman testified that, in reliance upon the report, he and his wife had not had the home independently inspected. Taken together, this evidence supports the inference that, when Coldwell Banker entered into the inspection agreement, it intended to disclose the inspection report to prospective purchasers and intended to use the report as a sales tool upon which prospective buyers could rely when making the decision to purchase. The evidence supports the view that the clear purpose of the promisee here, Coldwell Banker, in obtaining the promise of part of the performance of the inspection, was to confer upon prospective purchasers, such as the Naumans, as "other interested parties," a direct benefit in the form of a right to rely upon RESS's promise in their purchase decision and a right to enforce RESS's obligations in the inspection. See, e.g., Restatement (Second) of Contracts § 304 (1981), cmt. e (in cases of doubt, the question wheth-

er such an intention is to be attributed to the promisee may be influenced by the likelihood that recognition of the right will further the legitimate expectations of the promisee, make available a simple and convenient procedure for enforcement, or protect the beneficiary in his reasonable reliance on the promise).

### RESS'S INTENTION

In essence, RESS claims it had no meeting of the minds with Coldwell Banker on the subject of whether "other interested parties," such as the Naumans, as prospective purchasers, might directly enforce the contract as third party beneficiaries. A meeting of the parties' minds has been stated to be essential to the existence of a valid contract. *See Indiana Service Corp. v. Town of Flora* (1941), 218 Ind. 208, 31 N.E.2d 1015. On appeal, RESS claims it did not subjectively intend to allow prospective purchasers to enforce the contract. Such an interpretation of the "meeting of the minds" requirement relies upon the above language of the cases, such as, "only if the contacting parties clearly intended to directly benefit him by imposing a duty in his favor," "must clearly evidence a distinct intention to benefit such third person," "when it clearly appears that it was the purpose, or a purpose, of the contract to impose an obligation on one of the contracting parties in favor of such third party," "it must appear that it was the intention of one of the parties to it to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligations thus imposed," and an "intent that the promising party or parties shall assume a direct obligation to him."

■ This view of intent ignores the more objective manner of interpreting the parties' intent. As this Court has stated, the intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. *Holloway v. Giganti, Inc.* (1989), Ind.App., 540 N.E.2d 97. The cardinal rule of contract interpretation is to ascertain the intention of the parties from their expression of it. The court does not examine the hidden intentions secreted in the

heart of a person but, rather, examines the final expression found in conduct. The intention of the parties, however, is to be determined in light of the surrounding circumstances which existed at the time the contract was made. *Wallace v. Rogier* (1979), 182 Ind.App. 303, 395 N.E.2d 297. This view is consistent with the following statement about the intention with regard to third party beneficiaries:

> the question of the intention of the contracting parties, as distinguished from their motives, which are not controlling, should be gathered from the terms of the contract itself, considered in its entirety against the background of the circumstances known to and shown to surround the contracting parties at the time of its execution.

*Jackman,* 114 Ind.App. at 445, 52 N.E.2d at 367.

The inspection report provided that Coldwell Banker may disclose the contents of the report to other interested parties. A representative from RESS acknowledged that RESS had known the property would be sold at some time in the fairly near future. He also acknowledged that an ultimate buyer of the inspected property is "certainly a very interested party." The terms of the contract itself, considered in its entirety against the background of the circumstances known to and shown to RESS and Coldwell Banker at the time of its execution, support the determination that RESS knew or should have known that Coldwell Banker was likely and motivated to disclose the inspection report to prospective buyers, who would then rely upon it in the decision process. See, e.g., 4 Corbin, Contracts § 776 (1951) (A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others ... (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract); Restatement (Second) of Contracts § 302 (1981), cmt. d (if the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him, then he is an intended beneficiary). Thus, the outward manifestations of the parties show that they entered into an agreement clearly intended for RESS to assume obligations in favor of prospective purchasers, as "other interested parties," to directly benefit them with the right to enforce the contract against RESS.

In large part, RESS relies upon *Emmons v. Brown* (1992), Ind.App., 600 N.E.2d 133, to support its contention that the Naumans are not third party beneficiaries of the contract between RESS and Coldwell Banker. There, this Court concluded that the prospective purchasers, who had sought financing for a house, were not third party beneficiaries of a Federal Housing Administration (FHA) appraisal report even though it had identified them as the owner/occupant and had stated the report might be used by the borrower. *Id.* at 134, 135. This Court stated:

> [h]owever, neither of these provisions indicates a clear intent on the part of [the appraiser] and FHA to render a direct benefit to the [borrowers]. Thus, it appears that the [borrowers] would not qualify as third party beneficiaries to the FHA appraisal.

*Id.* at 134. Of course, RESS claims the same result obtains in the present case.

■ The intention of the parties, however, should not only be gathered from the terms of the contract itself but also should be considered against the background of the circumstances which existed at the time of its execution. *Wallace,* 182 Ind.App. 303, 395 N.E.2d 297; *Jackman,* 114 Ind.App. 437, 52 N.E.2d 363. As decided above, the surrounding circumstances in this case support the conclusion that the Naumans were third party beneficiaries of the contract.

The surrounding circumstances in the *Emmons* case were different from those here in an important respect. The *Emmons* Court believed that the United States Supreme Court had rejected the notion that Congress had intended to establish a duty of care for the benefit of borrowers. *Emmons,* 600 N.E.2d at 135 (citing *United States v. Neustadt* (1961), 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614). This might be an implicit acknowledgement of the trend articulated in

Restatement (Second) of Contracts § 313(1) (1981):

> The rules stated in this Chapter [on contract beneficiaries] apply to contracts with government or governmental agency except to the extent that application would contravene the policy of the law authorizing the contract or prescribing remedies for its breach.

The surrounding circumstances in *Emmons* included the determination that Congress had not intended to establish a duty of care for the benefit of borrowers from the FHA. Therefore, the recognition of the borrowers in *Emmons* as third party beneficiaries of the FHA appraisal would have contravened the policy of the law which had authorized the contract, that is, the legislative intent behind the statutory authority for the appraisal.

As stated in *Cason v. United States* (1974), 381 F.Supp. 1362, *affirmed,* (8th Cir.1975), 510 F.2d 123, *cert. denied* 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 75 (cited in a quote in *Emmons,* 600 N.E.2d at 135):

> Inspection and appraisal is required by Congress and the relevant HUD and FHA regulations; it is not required by the contract of insurance. Since inspection and appraisal is not a contractual obligation, an improper inspection and appraisal cannot give rise to a claim for breach of contract and cannot support a third-party beneficiary theory.

*Id.* at 1367. In the present case, the contract between RESS and Coldwell Banker required the inspection. It was not a statutory or regulatory obligation which may not support a third party beneficiary theory. The agreement was not a contract with government or a governmental agency, and the application of third party beneficiary theory does not contravene any policy of a law which authorized the contract.

The evidence supports the determination that the Naumans are third party beneficiaries of the contract between RESS and Coldwell Banker, as evidenced by the inspection report from RESS. The Naumans' status as third party beneficiaries was available to be used as a basis of duty in a negligence action. *See Emmons,* 600 N.E.2d at 134. The evidence is sufficient to support the findings and conclusions of the trial court, and the judgment is not clearly erroneous.

## II

Next, RESS claims the damages awarded were excessive to remedy defects discoverable by properly performing the duty imposed by the contract. In support of this claim, RESS notes that the report limits the inspection to a series of "visual" examinations of various items. According to RESS, the conditions discoverable through a visual inspection could be remedied at less than a cost of $1,500.00 and the remainder of the $3,000.00 award is excessive.

The finding that the Naumans were damaged in the amount of $3,000.00 was a finding of fact. *See Conner v. Andrews Land, Home & Improvement Co.* (1904), 162 Ind. 338, 349, 70 N.E. 376 (finding that the plaintiff, by reason of the nonperformance of the contract by the defendant, is damaged in the sum of $6,000 was a finding of fact). As noted, findings of fact are clearly erroneous when the record is without facts or reasonable inferences to support them. *Fowler,* 612 N.E.2d at 600.

■ The inspection conducted in this case was demonstrably not limited to a "visual" examination of various items. The inspector had not limited the inspection of the garage door opener to a visual examination of it and had not limited the inspection of the electrical system to a visual examination of the electrical panel. He had engaged the garage door opener to determine whether it was operable and had removed the front cover from the electrical panel to fully examine it. Further, the inspection report itself shows the inspector inserted dye into the private sewage system, and such conduct is not merely a visual examination even though the inspector also examined the grounds for the dye as a sign of seepage.

The Naumans claim the inspection of the chimney likewise should not have been limited to a visual examination. The trial court determined that to have marked the chimney flues as "adequate," without first having removed the cap and looked down the chimney,

was negligent. The evidence supports this conclusion. Therefore, the trial court's award to the Naumans is not clearly erroneous even though the damages were not limited to those discoverable only by visual inspection.

Further, we cannot disturb an assessment of damages, on the ground that the amount is excessive, where the case contains nothing to induce the belief that the trier of fact must have acted from prejudice, partiality, or other improper motive. *See Louisville, New Albany and Chicago Railway Co. v. Pedigo* (1886), 108 Ind. 481, 488, 8 N.E. 627, 630 (jury verdict). The trial court based its award on the evidence and the allowable inferences without the apparent intervention of an improper factor. We may not disturb the award.

Judgment affirmed.

BAKER and HOFFMAN, JJ., concur.