Daniel R. BURBACH, Appellant,

v.

RADON ANALYTICAL LABORATO-
RIES, INC., d/b/a Ral Inspection
Services, Appellee.

No. 01–1566.

Supreme Court of Iowa.

Sept. 5, 2002.

As Amended on Denial of Rehearing
Oct. 25, 2002.

Todd L. Stevenson of Kane, Norby &
Reddick, P.C., Dubuque, for appellant.

James M. Heckmann and Douglas Q.
Davis II of James M. Heckmann Law Of-
fices, P.C., Dubuque, for appellee.

NEUMAN, Justice.

This appeal concerns the liability of a
home relocation inspection company to the
buyer of a home for an allegedly negligent
inspection report relied upon by the home
buyer in making the purchase. The dis-
trict court determined, on summary judg-
ment, that the home inspection company
owes no duty to third persons who rely to
their detriment on the company's repre-

sentations. We reverse and remand for further proceedings.

## I. Background.

American Escrow and Closing Company (American Escrow), an employee relocation company, hired the defendant, Radon Analytical Laboratories (Radon), to perform a relocation inspection on a home in Dubuque, Iowa. The inspection was performed in February 1999 by Michael Davis, a Radon employee. The written inspection report was then submitted to American Escrow.

Subsequently, in June 1999, plaintiff Daniel Burbach executed a written purchase agreement with American Escrow to purchase the home. The agreement gave Burbach ten days to obtain a satisfactory inspection of the premises. Rather than hire an independent inspector, Burbach personally inspected the premises. In addition, Burbach received from his realtor, and relied upon, a copy of the final written inspection report prepared by Radon.

This dispute arose when Burbach discovered his home was covered with Louisiana–Pacific Innerseal Siding (L–P siding), a siding widely regarded throughout the home inspection industry as defective and known to be the object of a class action lawsuit.[1] It is undisputed that Radon was aware of these problems and the pending lawsuit prior to 1999. However not all Radon employees were trained or familiar with the L–P siding defects. Davis, an untrained employee, failed to identify the siding as "L–P siding," identifying it instead as "wood" siding.

Burbach filed this action against Radon seeking damages for its negligence in performing the inspection and its failure to disclose structural defects in the home.[2] Radon subsequently moved for summary judgment, contending it owed no duty to warn Burbach of the defects. Over Burbach's resistance the district court sustained Radon's motion, concluding as a matter of law that Radon owed no duty to Burbach when it performed the home inspection. This appeal by Burbach followed.

## II. Scope of Review.

Because this case reaches us on appeal from summary judgment, we review for correction of errors at law. *McComas–Lacina Constr. Co. v. Able Constructors*, 641 N.W.2d 841, 843 (Iowa 2002). Summary judgment is appropriate only "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Iowa R. Civ. P. 1.981(3) (2002)). In deciding whether summary judgment was appropriately granted, we are obliged to view the record in the light most favorable to the resisting party. *Id.* The burden of proof rests on the party seeking summary relief. *Id.* at 843–44.

## III. Issue on Appeal.

Burbach argues on appeal that his reliance on Radon's inspection report was foreseeable, thereby creating a duty of

---

1. The record reveals that L–P siding is composite material made of wood chips and glue and can be easily detected by its "distinctive mark," a knot, on the siding. When not properly maintained or installed, the siding "delaminates," causing expansion of the wood and absorption of moisture.

2. Burbach also sued the previous homeowners and the relocation company, American Escrow. Those parties settled with Burbach prior to the entry of summary judgment.

care owed to him by Radon under this court's holding in *Larsen v. United Federal Savings & Loan Ass'n,* 300 N.W.2d 281 (Iowa 1981). Radon counters that the case is more akin to *Teunissen v. Orkin Exterminating Co.,* 484 N.W.2d 589 (Iowa 1992), where we rejected a similar allegation of duty with respect to a termite inspector. Radon contends no privity existed between Radon and Burbach, and Radon had no actual knowledge Burbach would rely on the documents when purchasing the home. The district court sided with Radon, holding that Radon's duty ran only to American Escrow, the entity for whom the document was prepared. The court further noted even if the duty of care were broadened to include persons not in privity with Radon, the record failed to support Burbach's claim that he was a foreseeable user of the report.

## IV. Analysis.

The parties' controversy implicates section 552 of the Restatement (Second) of Torts. The section provides in part:

(1) *One who, in the course of his business, profession or employment,* or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information,* if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) *by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it;* and

(b) through reliance upon it in a transaction that *he intends the information to influence* or *knows that the recipient so intends* or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977) (emphasis added).

There is no dispute that Radon falls within subsection (1) of this Restatement section. Clearly Radon is "in the business" of providing relocation inspections "for the guidance of others." The parties' dispute is over the applicability of subsection (2). Pertinent to this determination is the commentary to section 552:

It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given.

*Id.* cmt. h, at 133.

In *Larsen,* this court relied on section 552 to find that a lender's negligent appraisal report could furnish the basis for a negligence suit by home buyers who relied on the report to their detriment, even though the report was prepared for the lender, not the home buyers. *Larsen,* 300 N.W.2d at 287. Citing the language of the Restatement, we said liability "may extend to losses sustained by more than one person, as long as the supplier of the information (1) intended to supply the information to that person . . . or (2) knew the recipient intended to supply it." *Id.* The record revealed that the lender had "every reason to know its appraisal would influence this home purchase transaction." *Id.* We therefore upheld the district court's find-

ing that a duty existed, as well as finding the record sufficient to submit the issue of negligent breach of duty to the jury. *Id.* at 288.

*Teunissen,* the case upon which Radon relies, involved an allegedly negligent termite inspection report given years in advance of the purchase of the bug-infected home by the plaintiff. *Teunissen,* 484 N.W.2d at 590. Applying the test set forth in *Larsen,* we held the relationship between the parties was too remote to sustain the duty asserted by the plaintiff. *Id.* at 591. We described the factual context for our decision as follows:

> Teunissen was far removed from the picture when Orkin performed its treatment and inspection that Teunissen claims was negligently done. Teunissen was not even aware of the contract before she discovered the termites. So we can scarcely say she relied on Orkin to perform these services with care. Nor was Orkin aware that the property would be sold. So we can likewise scarcely say that Orkin actually foresaw that it was performing these services for the benefit of a prospective buyer.

*Id.*

■ Factually, the case before us falls somewhere between *Larsen* and *Teunissen.* Unlike *Larsen,* where the appraisal report was prepared with a known borrower in mind, the report prepared by Radon was issued to American Escrow without precise knowledge of whom the ultimate buyer of the property might be or when a purchase might occur. But the report itself contains language confirming Radon's knowledge that an escrow company will likely share the report with prospective buyers. Under the heading "Objective of the Relocation Home Inspection Report," the document states "the client may, at its discretion, disclose [the report] to other interested parties."

In a nearly identical case, the Indiana Court of Appeals found the language quoted above sufficient to show that an escrow company was "likely and motivated to disclose the inspection report to prospective buyers, who would then rely upon it in the decision process." *Real Estate Support Servs., Inc. v. Nauman,* 644 N.E.2d 907, 911 (Ind.Ct.App.1994). As noted by the Indiana court, a representative of the inspection company in that case testified that "an ultimate buyer of the inspected property is 'certainly a very interested party.' " *Id.* at 911. So also here, Radon's president acknowledged in his deposition that relocation companies often provide copies of the report to the potential buyers of the home.

Given this documentary evidence and testimony concerning Radon's knowledge that its report would be reviewed and potentially relied upon by a limited but foreseeable class of persons, we think the district court erred when it refused to recognize the duty of care imposed thereby under Restatement section 552 and our *Larsen* case. The facts are plainly distinguishable from the ones that led us to reach an opposite conclusion in *Teunissen.* There the relationship between the parties was too remote to support the duty alleged.

We are further convinced the record made on summary judgment contains at least colorable evidence supporting Burbach's claim of negligent breach of the duty owed. We therefore reverse the summary judgment granted in Radon's favor and remand to the district court for the trial to which Burbach is entitled.

**REVERSED AND REMANDED.**