397 P.2d 270 (1964)
Minnie E. McIVER, Appellant (Defendant below), and
Ruthanna Hankin, as Guardian of the Person and Estate of Minnie E. McIver, an Incompetent Person (Defendant below),
v.
Christine N. FAULK and Evelyn Faulk Earle, Appellees (Plaintiffs below).
No. 3248.
Supreme Court of Wyoming.
December 8, 1964.
Henderson, Godfrey, Kline & Uchner, Harry B. Henderson and David D. Uchner, Cheyenne, for appellant.
Guy, Phelan, White & Mulvaney and Walter B. Phelan, Cheyenne, for appellees.
Before PARKER, C.J., and HARNSBERGER, GRAY, and McINTYRE, JJ.
Mr. Justice HARNSBERGER delivered the opinion of the court.
On May 24, 1962, claiming that they were the owners and entitled to the possession of certain real estate in the City of Cheyenne, Wyoming, the plaintiffs brought action against defendants Minnie E. McIver, and Ruthanna Hankin as guardian of the person and estate of Minnie E. McIver, an incompetent person, to obtain from them possession of the property. The defendants denied plaintiffs had any interest in the property, alleging that defendant Minnie E. McIver was the owner of the same; that a warranty deed dated July 29, 1960, conveying the property from Minnie E. McIver to plaintiffs was invalid and void because of fraud and undue influence exerted by plaintiffs. Defendants also counterclaimed that plaintiffs defrauded Minnie E. McIver of approximately $24,000. The plaintiffs generally denied the allegations of the counterclaim. At the beginning of the trial which was held on September 30, 1963, counsel for plaintiffs moved to dismiss Ruthanna Hankin as guardian of the estate of Minnie E. McIver on the ground that there was no legal guardianship. The court granted the motion, and an exception thereto was taken by counsel for the defendants. Under these circumstances and upon trial to the court, judgment was entered in favor of plaintiffs and against the defendant McIver, and the court decreed the title to the real estate was vested in plaintiffs, free and clear of all claims by the defendant Minnie E. McIver; that plaintiffs have and recover possession of the real estate; and that the defendant Minnie E. McIver take nothing by reason of her counterclaim against the plaintiffs.
Defendant McIver appeals.
*271 The record is devoid of any evidence showing there was ever a guardianship "established for Mrs. McIver in the District Court on August 15, 1961." However, appellant in her brief states "Although it was of no effect at the time of this lawsuit, because of recent developments in Wyoming law, a Guardianship was established for Mrs. McIver in the District Court on August 15, 1961." From this it would seem that defendants have conceded that Minnie E. McIver has never been legally declared to be incompetent and that a legal guardianship never existed. Furthermore, Ruthanna Hankin as guardian of the person and estate of Minnie E. McIver, an incompetent person, does not appear to have taken any appeal from the district court's judgment dismissing her from the case, and for purposes of this appeal it will be considered that defendant Minnie E. McIver has not ever been judicially declared incompetent, and a guardian of her person and estate has never been appointed.
The facts are briefly these. When she was of the age of 78 years, Mrs. McIver, who had theretofore been actively engaged in business affairs, was visited in Cheyenne by plaintiffs who are respectively her sister, Christine N. Faulk, and her niece, Evelyn Faulk Earle, when within a few hours they were notified of the accidental death of the brother of Christine N. Faulk and Minnie E. McIver. Consequently, plaintiffs remained with Mrs. McIver over July 29, for the burial of the deceased. Following the burial Mrs. McIver executed a warranty deed to plaintiffs, conveying the real estate for which plaintiffs sought quiet title. Evidently the deed to Christine N. Faulk and Evelyn Faulk Earle was prepared by one Carl Johnson, kept in the possession of Mrs. McIver until she signed, acknowledged, and executed it in the presence of a notary public, her sister Christine, her niece Evelyn, and Mr. Johnson, following which she gave the deed to her niece Evelyn, who in turn gave it to her mother Christine, who then left it with Carl Johnson, who, approximately a year later, upon the instruction of Mrs. Faulk, filed it of record.
Upon trial of the case, the defendant Minnie E. McIver herself did not appear personally and she did not testify by deposition.
In order to have a clear understanding of the relationships and interests of the parties involved, as well as some of those who testified, it might be well to note that Ruthanna Hankin who testified as a defense witness is a granddaughter of Minnie E. McIver; that Ethel Jones, also a defense witness, is a daughter-in-law of Minnie E. McIver; that Phillis Patterson, another defense witness who lives in California, is an adopted daughter of Minnie E. McIver; and that Hilda Nelson, a sister of Minnie E. McIver, had been married to the father, now deceased, of Carl Johnson.
A composite of the testimony of witnesses called by defense counsel was to the effect that commencing sometime in January 1960, Minnie E. McIver showed some sign of failing health and mentality; that before such failure Carl Johnson began making income tax returns and performing other financial services for Mrs. McIver. While there is a complete absence of evidence showing any importunity or effort by the plaintiffs to induce Mrs. McIver to make the criticized deed, appellant maintains Carl Johnson exercised undue influence upon defendant and induced Mrs. McIver to make the criticized transfer of property to her sister and niece. Also, some of the defense testimony suggests Carl Johnson received compensation from plaintiffs for influencing the defendant to make the deed. On the other hand, testimony of several of defendant's own witnesses, as well as that of plaintiffs, tends to show Mrs. McIver was fully competent at the time of the execution of the questioned deed and that she was not under anyone's influence, especially not that of Carl Johnson.
Briefly, the evidence from defense's own witnesses indicating Mrs. McIver's competency as well as her freedom from Johnson's influence is in part as follows: Mrs. *272 McIver did not like Carl Johnson; she ignored him; she was firm with him; she "told him off"; she "stood up to him"; she would not talk to him and ordered him to leave; in April of 1960, immediately prior to the execution and delivery of the challenged deed dated July 29, 1960, Mrs. McIver and the purchaser were alone when she negotiated the sale of her ranch property for $40,000 which price, the defense witness stated, was the highest price paid in that area as of that date, and Mrs. McIver was not cheated by the sale; Mrs. McIver knew what she was doing in April 1960, and on May 4, 1960; Mrs. McIver was able to care for her property and eject a tenant for nonpayment of rent in September 1960; Mrs. McIver, in January 1961, opened an account at Cheyenne Federal in the name of herself and Phillis Patterson, her adopted daughter, and the aunt by adoption of the testifying witness, and the defendant was not influenced by Phillis Patterson; Mrs. McIver opened a bank account in the name of herself and Ruthanna Hankin, her granddaughter, the testifying witness, on April 21, 1960, no suggestion of Mrs. McIver's incompetency being then made; in July 1961, the witness accepted a deed for real estate from Mrs. McIver which was made without any consideration and the same was acknowledged before one of Mrs. McIver's counsel acting as a notary public, and at the time the witness failed to advise this counsel that Mrs. McIver was forgetful and did not know about her property; and the same witness, Ruthanna Hankin, and her husband accepted property from Mrs. McIver, sold it, and have kept the proceeds.
A resume of the defendant's financial transactions as exhibited by the record shows that on July 1, 1961, Mrs. McIver's sister, Christine Faulk, ultimately received $10,000 which Mrs. McIver herself had received as the survivor of a joint account with Bernard Nelson, a brother of both Mrs. McIver and her sister Christine Faulk; on November 30, 1961, Anna M. Johnson received $10,000 which originated as an account of $1,377.70 in the sole name of Mrs. McIver on July 29, 1960, then was transferred to the joint account of Mrs. McIver and her niece Evelyn Faulk Earle, and later, on June 12, 1961, when the account had grown to $9,473.74, was transferred to the sole account of Mrs. McIver's sister, Christine Faulk, and on April 2, 1961, when the account had reached $10,000, was transferred to the joint account of Christine Faulk, her son-in-law Edward H. Earle, and her daughter Evelyn Faulk Earle, who later transferred the $10,000 to the account of Anna M. Johnson.
From this it must be apparent that Mrs. McIver's sister received $10,000 from monies which, at least in part if not in the main, were contributed by her brother and by Mrs. McIver. Inasmuch as it appears from the record that Mrs. McIver was a lady of some means, we cannot conclude that these expressions of her largess were incompatible with either her desires, her competency, or that it suggests she was being subjected to anyone's undue influence. On the contrary, these monetary bestowals might reflect the material and wise response of their donor to the ties of close relationship and recognition of those who were the recipients of her bounty.
Measured against these bestowals to her own sister are certain background influences appearing in the record that could reasonably have prompted what Mrs. McIver did in deeding the subject property to one sister and her daughter and arranging that they should have $10,000.
By the complaint filed herein, it is alleged that on August 15, 1961, Mrs. McIver was "adjudged" to be an incompetent and her granddaughter Ruthanna Hankin was appointed to be the guardian of her person and estate. While this was only an allegation, its truth was affirmed by the court's dismissing Ruthanna Hankin as such guardian from the action on counsel's representation that the purported guardianship proceedings were illegal. Although the appellant excepted to that dismissal, the objection is not pursued here, and appellant seems to *273 concede the attempt to have Mrs. McIver adjudged incompetent and Ruthanna Hankin appointed as her guardian was in fact made, and that those proceedings were declared illegal and therefore void.
The record is silent as to what may have prompted the effort to have Mrs. McIver declared an incompetent, but the record sufficiently shows such an attempt was made. Neither does the record disclose the circumstances which led to the attempted incompetency proceeding. However, events anteceding that attempt might understandably have inspired Mrs. McIver to make disposition of some of her properties during her lifetime. In so doing, she did not forget that Carl Johnson had performed valuable and beneficial services in her behalf. These included his assistance in obtaining an additional one-half of one per cent interest on the deferred payments of the $40,000 sale of her ranch land; the income tax benefit she would receive as a result of having the purchase payments of her ranch limited to $10,000 annually; the retention by Mrs. McIver of one-half of the mineral rights in the lands which were sold; the yearly preparation of her income tax returns; as well as his assistance and advice given generally in her financial matters.
It is not unreasonable therefore to conclude that Mrs. McIver's joint account with Carl Johnson established on May 4, 1960, and which increased to $10,000 before it was exhausted by a withdrawal on June 12, 1960, of $5100, and another withdrawal on June 14, 1961, of $4900, which monies went to the joint account of Arith-Matic Commercial Enterprises, Carl A. Johnson, and Anna Johnson, was at least in part a recognition of Carl Johnson's services to her.
Notwithstanding what may have been her feelings toward those who later attempted to have her adjudged incompetent, Mrs. McIver, on January 13, 1961, opened a joint bank account with Phillis Patterson, her adopted daughter, and in April 1961 opened a joint bank account with Ruthanna Hankin, her granddaughter. Also, in July 1961, Mrs. McIver deeded other real property to Ruthanna Hankin and her husband, which they then sold and have kept the money.
In the face of all of the evidence, the suggestion that Carl Johnson unduly influenced Mrs. McIver to deed the subject real property to her sister and her niece, and that he received compensation for so doing, is not in the least convincing and it is not surprising that the trial court refused to be persuaded by it. If more was needed to influence the lower court's finding against the claim that Mrs. McIver was improperly influenced, there is the testimony of both the plaintiffs that neither had knowledge of the questioned deed until Mrs. McIver produced it, then signed and delivered it to Evelyn Faulk Earle, and afterwards Mrs. McIver expressed herself as being greatly pleased over what she had done in conveying unto them the real estate.
The absence of any substantial evidence to show that Mrs. McIver was either incompetent or was improperly influenced by anyone to execute the questioned deed or to make the monetary provisions which she did, coupled with the court's findings to the contrary, requires that the judgment of the trial court be affirmed.
Affirmed.