STANLEY *v.* ESTATE OF ALICE WALTERS ET AL.

[No. 370A41. Filed September 8, 1970. Rehearing denied October 21, 1970. Transfer denied December 29, 1970.]

---

*Marshall F. Kizer, Richard F. Joyce, Kizer & Neu,* of Plymouth, for appellant.

*Richard C. Kaczmarek,* of South Bend, for appellees.

SHARP, J.—This is an appeal from a decision in which the trial court denied the claim of the Plaintiff-Appellant, Eugene Stanley, against Defendant-Appellee Estate of Alice Walters. The sole contention here is that the decision of the trial court is contrary to law.

The record discloses without dispute that during the period from December 4, 1962 to June 3, 1967, the Plaintiff-Appellant Stanley wrote a series of 79 checks, totaling $6227.00 payable directly to Alice Walters or others. Of this total of 79 checks there were 16 checks totaling $1138.68 which were written to other persons for repairs on decedent Alice Walters' property. Plaintiff-Appellant filed Requests for Admissions as follows:

"1. That each of the checks payable to the order of Alice Walters, copies of which checks are attached to the Plaintiff's claim and filed therewith are genuine in regard to the endorsement on the reverse side thereof the deceased, Alice Walters.

2. That the sums of money shown on said checks payable to the order of Alice Walters were applied to the payment of statements for the repair and improvement of real estate owned at the dates shown on said checks by the deceased, Alice Walters.

3. That checks numbered 17962 and 17963, filed with and attached to the Plaintiff's claim herein, were applied to the improvement of property owned by the decedent at the time of said checks, which property was located at 119 Leland Street, Port Charlotte, Florida.

4. That checks numbered 18771, 19172, 19357, 20058, 20322, 20412, 20711, 21385, 19640, 19658, 19684, 19689, 19780, were made a part of Plaintiff's claim and attached thereto, which checks were sums used in the improvement of the deceased's property or were for services performed for the deceased.

5. That the check dated May 20, 1964, payable to the order of Englewood Electric Supply in the amount of $72.63, which check was attached to Plaintiff's claim and made a part thereof, was a sum of money used for the improvement of decedent's real estate."

During the Oral Argument of this case Counsel for the Defendant-Appellee stated that said Requests for Admissions were properly before the trial court for its consideration and that all Requests for Admissions may be considered as admitted. The parties also entered into the following stipulation:

"That over a period of time from December 4, 1962, to June 3, 1967, the claimant, Eugene Stanley, issued seventy-nine checks in the total sum of Sixty-two Hundred twenty-seven dollars ($6227.00) payable either directly to the decedent, Alice Walters, hereinafter referred to as Walters, or to others. That the sums of money represented by said checks were for the payment for repairs and improvements of real estate owned by Walters or for payment of services performed for Walters. That in June of 1966, Walters paid Stanley the sum of Five Hundred Dollars ($500.) toward repayment of moneys advanced by Stanley in connection with the Walters' property. That during the period of time of the issuance of said checks by Stanley, Walters had a checking account in the First Bank & Trust Company of South Bend in which she made deposits and on which she wrote checks. During said same period of time, Walters made savings accounts in the Tower Federal Sav-

ings & Loan Association of South Bend, First Bank & Trust Company of South Bend, South Bend Federal Savings & Loan Association and the American Bank & Trust Company of South Bend. That during said period of time, Walters' average balance in savings account was between $20,000 and $30,000. That at the time of her death, the gross value of Walters' estate was $84,046.76, as shown by Personal Representative's Inventory and Appraisement filed on January 24, 1969. That among the checks written by Walters over said period of time, no check was drawn payable to Stanley."

With one exception this case was submitted on stipulations as to documentary evidence and the Requests for Admissions. The only oral testimony heard was the brief testimony by Mr. Crocker of the State Exchange Bank of Plymouth. His pertinent testimony was as follows:

"Q: I refer you, Mr. Crocker, to what has been marked for identification 'Plaintiff's Exhibit 3' and ask you to look at that. Can you identify Plantiff's Exhibit 3?

A: Yes.

Q: Is that in your handwriting?

A: Yes.

Q: You handled the transaction in relation to the exhibit?

A: Yes.

Q: Will you tell the court what transpired in relation to Plaintiff's Exhibit 3?

A: The check was brought in by Mr. Stanley to be sent for direct collection.

Q: And the check was from who?

A: Randol Realty is listed on our remit sheet which we sent to the Port Charlotte Bank for direct collection.

Q: And it was payable to whom?

A: It was payable to Mrs. Alice Walters.

Q: Was there an endorsement on the check?

A: No. As I understand it, we pulled the photostat of this check—not of this check but the one that was paid to us. There would have had to have been an endorsement on there, on it for the Port Charlotte Bank else they would have returned it to us.

Q: Was the bank paid by the Port Charlotte bank?
A: It was paid to us, the Plymouth branch, on July 2.
Q: And when that was paid to you, what was done with the proceeds of that check?
A: We notified Mr. Stanley of receiving the check, which he picked up and was later deposited by Mr. Stanley in the Plymouth branch on July 12.
Q: To his account?
A: Yes"

On cross-examination he testified:

Q: You have referred to a balance. How much was the total of that check?
A: The total check was five hundred dollars.
Q: And the entire amount was paid to Mr. Stanley?
A: Yes. On collection, the Port Charlotte Bank retained seventy-five cents for their charges.
Q: So that the deposit was—
A: $499.25.

The parties also stipulated:

"IT IS STIPULATED AND AGREED that the sum of $500.00 was paid by Alice Walters to the plaintiff, Eugene Stanley, toward repayment of monies advanced by him in connection with decedent's property."

The Plaintiff-Appellant contends that the undisputed evidence in this case leads solely to the conclusion that the moneys advanced to the decedent, Alice Walters, by the Plaintiff-Appellant Stanley were advanced as a loan.

As a general rule when a check is issued and paid to another, in the absence of any contrary evidence, it is presumed to be made in payment of a debt due the payee of the check. If it is shown that the check was not issued to pay a debt, then the presumption arises that said check was a loan. See 58 C.J.S., *Money Lent,* § 7(d), p. 883. In support of this proposition the Plaintiff-Appellant cites a series of New York cases:

*Nay* v. *Curley*, 113 NY 575, 21 N. E. 698 (1889) ;
*Shea* v. *McKeon*, 264 A.D. 573, 35 NY Supp. 2d 962 (1942) ;
*DeCordova* v. *Sanville*, 177 A.D. 592, 164 NY Supp. 411
    (1917) ;
*Pacific Management Corp.* v. *Toumaniantz*, 14 A.D. 2d 864,
    221 NY Supp. 2d 265 (1961) ;
*Standard Building Supply Corp.* v. *Hotel Abbey Holding
    Corp.*, 24 A.D. 2d 765, 263 NY Supp. 2d 596 (1965) ;
*City Bank Farmers Trust Company* v. *Roosen*, 251 A.D.
    437, 296 NY Supp. 797 (1937).

Neither the Plaintiff-Appellant nor Defendant-Appellee have
been able to cite any Indiana cases directly on this issue, and
we have found none. However, the above cited authorities
do state the majority and preferable rule and we hereby adopt
the same as a part of the common law in Indiana.

There is absolutely no contention by the Appellee in its
Brief or in Oral Argument that the checks in question were
in payment of a debt owed by the Appellant to Alice Walters.
All that was said by the Appellee in Oral Argument and in
its Brief completely negates any such contention.

The Appellant contends that the stipulations, Requests for
Admissions, and evidence conclusively rebut any presumption
that said checks were issued in the payment of any debt
from the Appellant to Alice Walters and we agree.

The sole contention of the Appellee is that such checks
were a gift from Appellant to Alice Walters. In Oral Argu-
ment Appellee relied explicitly and solely on the issue of gift.

In the record there is some brief passing reference that
from June 1962, through January 1966, the Appellant and
Alice Walters "saw each other socially". There is ab-
solutely no further evidentiary detail to describe the
nature of such social relationship. The Appellee uses
these four words "saw each other socially" in an attempt
to prove the existence of a family relationship within the
meaning of *Walting* v. *Brown*, 139 Ind. App. 18, 211 N. E.
2d 803 (1965) and *Wilhoite* v. *Beck*, 141 Ind. App. 543, 230

N. E. 2d 616 (1967). The evidence in this case as to the social relationship of the Appellant and decedent does not, as a matter of law, permit the inference of a family relationship as found in the *Walting* and *Wilhoite* cases. A cursory reading of either *Walting* or *Wilhoite* will clearly reflect the distinction.

In Oral Argument the Appellee stated the finding of a family relationship was critical to its position in this case. We hold as a matter of law that there is no evidence on which the Appellee may rely on the presumption of family relationship. Therefore, the Appellee may not have the benefit of the presumption of gratuity that springs from such relationship. As indicated in *Johnson* v. *Estate of Gaugh, et al.,* 125 Ind. App. 510, 124 N. E. 2d 704 (1955), absent a blood or family relationship there is no presumption that any services rendered to a decedent were done so gratuitously.

Lastly, Appellee contends the checks were inter vivos gifts within the meaning of *Kraus* v. *Kraus,* 235 Ind. 325, 132 N. E. 2d 608 (1956), *Bulen* v. *Pendleton Banking Co.,* 118 Ind. App. 217, 78 N. E. 2d 449 (1948), and *Michael* v. *Holland,* 111 Ind. App. 34, 40 N. E. 2d 362 (1942).

As indicated in those cases one of the critical elements of an inter vivos gift is donative intent. There is a total absence of any evidence of any donative intent in this case. In fact, the only relevant evidence in the record is to the contrary. For example, the parties stipulated that $500.00 paid by Alice Walters to Appellant was toward repayment of monies advanced by him in connection with decedent's property.

This case should be and hereby is reversed and remanded with instructions to enter judgment for Plaintiff-Appellant in the sum of $5,727.26 plus costs. Reversed and remanded.

Hoffman, P.J., and White, J., concur.

Pfaff, J., Not Participating.

NOTE.—Reported in 261 N. E. 2d 594.