Carl A. JOHNSON, d/b/a Arith-Matics,
Appellant (Plaintiff below),

v.

Ruthanna WOLD, Administratrix of the Es-
tate of Minnie E. McIver, Deceased,
Appellee (Defendant below).

No. 3841.

Supreme Court of Wyoming.

Oct. 23, 1970.
Rehearing Denied Dec. 10, 1970.

Carl A. Johnson, pro se.

Paul B. Godfrey, Cheyenne, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

PER CURIAM.

In the district court, Carl A. Johnson sued Ruthanna Wold, administratrix of the Estate of Minnie E. McIver, deceased, on two causes of action. The first alleged $5,100 was loaned to Minnie E. McIver on June 12, 1961 and that $138.10 was loaned to her July 10, 1961. The second cause of action alleges the deceased was indebted to plaintiff in the amount of $10,000 for services rendered by plaintiff to decedent during the years 1958 to 1962.

Upon trial of the case, judgment was entered in favor of defendant, with these findings of fact:

"(b) That the Plaintiff is guilty of laches in asserting his First and Second Cause of Action.

"(c) That Plaintiff's First Cause of Action which alleges a loan made June 12, 1961, is barred by the Statute of Limitations.

"(d) That the Plaintiff's Second Cause of Action which is based upon a claim filed in the estate for services allegedly performed in the years 1958 through 1961 is barred by the Statute of Limitations.

"(e) That the Plaintiff alleges that the debt described in the First Cause of Action is not based upon a written instrument, signed by the deceased, Minnie E. McIver, and the Plaintiff has failed to produce written documents or memoranda which would support the existence of an obligation to the Plaintiff on behalf of the deceased.

"(f) That the Plaintiff has failed to produce evidence of services rendered on behalf of the deceased or on behalf of her guardianship which was commenced in 1961."

Johnson has appealed, claiming the findings of the district court are in error.

Section 1–140, W.S.1957, which is sometimes referred to as the "dead man's statute," provides a party shall not testify where the adverse party is administrator of a deceased person, except in certain enumerated instances. None of the exceptions are applicable in the case we are dealing with.

■ In Kessler v. Kessler, Wyo., 380 P.2d 770, 774, we said the single common purpose of statutes like § 1–140 is to deny the living the right to testify adversely to the interests of those who take from or through a deceased as to matters which the

deceased, if living, could challenge and dispute. In other words, since the lips of Mrs. McIver are sealed by death, the lips of Johnson are sealed by this statute, insofar as transactions between them are concerned.

■ Even though Johnson is precluded from testifying to matters, where his testimony could be challenged by Mrs. McIver if she were living, it still does not relieve him of his burden of proving by competent evidence that the decedent was indebted to him at the time of her death. We think he has failed to meet the burden imposed upon him and the judgment of the district court will have to be affirmed.

### Claim Of A Loan

Johnson admits he has no note and nothing in writing from Mrs. McIver, which would acknowledge the loan Johnson claims to have made. His claim is based entirely on an oral contract. In his complaint, he alleges Mrs. McIver promised to repay the loan when she received the third payment on a ranch being sold by her.

Nothing appears in the testimony to establish the time of payment, or to show that Mrs. McIver ever promised to repay when she received a third ranch payment. Neither is there anything in the evidence from which such a promise can be inferred.

The only testimony pertaining to repayment consists of the following question and answer during cross-examination of Johnson:

"Q. This loan was to be repayed which could not have been made until the year 1962? A. And possible on account of the contract."

Johnson now claims his true answer was "Impossible on account of the contract," rather than "And possible on account of the contract." Regardless of what his answer may have been, however, the testimo-

ny shows nothing more than that Johnson is now claiming payment was due in 1962. There still is nothing to show any promise or agreement, express or implied, on the part of Mrs. McIver to the effect that payment was to be made in 1962, or when she received the third payment on her ranch.

■ In the absence of proof by any substantial evidence as to when the purported loan was payable, we must follow the general rule that where no time is fixed for the repayment of money lent, the obligation to pay arises at once and the statute of limitation begins to run from the date of the loan.

This rule is stated in 54 C.J.S. Limitations of Actions §§ 129 and 130, p. 45. It is also announced and followed in these cases: Ricker v. Ricker, 201 Or. 416, 270 P.2d 150, 152–153; Mallin v. Spickard, 103 Ga. App. 562, 120 S.E.2d 128, 129; Grant v. Williams, 158 Neb. 107, 62 N.W.2d 532, 535–536; and Haggerty v. Nobles, 244 Or. 428, 419 P.2d 9, 14–15. Cases which hold that an obligation payable on demand is due immediately, and that the statute of limitation runs from the date the obligation is incurred, include Schnug v. Schnug, 203 Kan. 380, 454 P.2d 474, 478, and Stebens v. Wilkinson, 249 Iowa 365, 87 N.W.2d 16, 17.

■ The plaintiff's evidence with respect to the making of a loan is somewhat confusing and difficult to understand. Therefore, without deciding whether there was evidence of a loan having been made, we prefer to dispose of plaintiff's first cause of action by holding it is barred by the eight-year statute of limitations, § 1–17, W.S.1957. Plaintiff's claim is that he loaned $5,100 on June 12, 1961 and $138.10 on July 10, 1961. His suit was commenced July 30, 1969.

### Claim For Services

We have already referred to § 1–140, W.S.1957, which states specifically that a party, such as Johnson is in this case,

"shall not testify." Although Johnson was permitted to testify to a number of things he should not have testified to, there still is no evidence that Mrs. McIver engaged his services for anything; there is no evidence of an express contract, either oral or in writing, between Johnson and Mrs. McIver for services and for payment therefor; and there is no evidence of any services actually performed, except that attorneys and the court called upon Johnson to surrender papers in his possession which belonged to Mrs. McIver.

■ Even if it were assumed that services were performed, there would be no way of knowing from the evidence what Johnson received from Mrs. McIver or what he has not received from her for such services. Thus, there would be no way to arrive at what is owing, if anything. Of equal importance is the fact that there is no evidence as to the value of services performed, if any were performed; and the courts would have no way of fixing a rate of compensation.

Appellant mentions a statement made by us in our opinion in the case of McIver v. Faulk, Wyo., 397 P.2d 270, 273, to the effect that Minnie E. McIver did not forget Carl Johnson had performed valuable and beneficial services in her behalf. However, the statement referred to was followed by an explanation indicating we thought Johnson had been compensated when monies went to the joint account of Arith-Matic Commercial Enterprises, Carl A. Johnson and Anna Johnson. We assumed this was done at least partly because of Johnson's services for Mrs. McIver.

We mention this situation because it points up what we are now saying—that the trial court had no way of knowing what has or has not been paid by Mrs. McIver to Johnson; and what is or is not owing. In the absence of a book account or other evidence showing a balance due, no judgment could be entered on Johnson's claim for services, especially in the absence of evidence of a contract and in the ab-

sence of evidence as to the extent of services and the value of such services.

In Kelsey v. Anderson, Wyo., 421 P.2d 163, 165, we pointed out the suit there involved was necessarily based on the theory of an implied contract. In such a suit, we said, it is axiomatic that plaintiff has the burden of proving circumstances under which a contract could be implied.

Johnson, perhaps partly because of lips sealed by the dead man's statute, simply has not proved in the case now before us circumstances from which an implied contract can be assumed. He has made no effort to prove an express contract and does not claim one. He has therefore failed in his burden of proof.

As to the lack of proof concerning the value of services rendered, we said in Snearly v. Hockett, Wyo., 352 P.2d 230, 234, the burden of proof, of course, of the time spent by Snearly and the "value thereof" was on him. A similar burden was on Johnson in the case we are now concerned with, and here again he has failed to meet that burden.

Affirmed.