Eugene WALLACE and Hazel Wallace, Appellants (Plaintiffs Below),

v.

Emma ROGIER, Appellee (Defendant Below).

No. 1–478–A–83.

Court of Appeals of Indiana, First District.

Oct. 2, 1979.

---

Jack R. Robinson, Rockport, for appellants.

John R. Werner, Cannelton, for appellee.

ROBERTSON, Judge.

Hazel and Eugene Wallace appeal the ejectment judgment rendered against them and the negative judgment on their counterclaim for specific performance of a contract for the sale of land. We affirm in part and reverse in part.

Hazel Wallace is married to Eugene Wallace and is the daughter of Emma Rogier and the late Mr. Rogier. The Rogiers owned a farm consisting of 160 acres in Perry County, Indiana. For a period of years, the Wallaces had been discussing the sale of the Rogier farm to the Wallaces. In a letter dated April 15, 1975 from the Rogiers, the following statement appears:

Did you sell your place? If you want ours we will let you have it for $20,000 we could get more than that for it. If we sell it we will have to get the money in payments so much a year for we will loose (sic) or (sic) Social Security.

The Wallaces came to the Rogier farm soon thereafter to further discuss the sale. After this discussion, the Wallaces sold their farm in Kentucky and moved to the Rogier farm in May of 1975.

On March 30, 1976, a contract for the purchase of real estate was signed by the Wallaces and Rogier in the offices of an attorney in Cannelton. The contract provided for the reservation of ". . . a life estate in the house, garden and pasture for two cows . . .," but was otherwise a standard form contract for this kind of transaction. The consideration recited in the contract was $20,000 (or about $125 an acre).

The evidence concerning this transaction was hotly contested at trial. The Wallaces insisted that the contract was exactly what it purported to be. Mrs. Rogier testified that she did not read the "paper" as she described it and was a reluctant signatory thereto. The attorney who drew up the document testified that he did so at the insistence of Wallace, who stated that he needed the contract for obtaining money for the transaction. The attorney testified he drew up the document only after making it clear to the persons present that it was not binding and not enforceable and would be used for the sole purpose of showing it to Wallace's banker. In short, the document was to be treated as a sham as between the Rogiers and Wallaces.

Thereafter, the Wallaces obtained $15,000 as part of the sale proceeds of their Kentucky land and obtained mortgage approval for $7,000 to complete the transaction. In May, the Rogiers refused to sign the deed, complaining of the mortgage (although the mortgage was not on the land affected by the life estate) and wanting more conditions inserted in the deed.

Mr. Rogier died. Mrs. Rogier filed suit for ejectment of the Wallaces and damages. The Wallaces countersued for specific performance of the land sale contract. The suits were consolidated for trial, and the trial court, without intervention of jury, found for Mrs. Rogier on her claim, awarded $1,000 damages to her for wrongful possession, and found against the Wallaces on their suit. This appeal followed.

Three issues are presented on appeal. The first is that no notice to quit was given as required by Ind.Code 32–7–3–5. The second issue is that there is no evidence for the damages awarded by the trial court, or alternatively, the damages are excessive. As a third issue, the Wallaces claim that there were no findings by the trial court on the issue of fraud or misrepresentation (nor sufficient evidence to support the same) and their claim for specific performance should have been granted.

The first issue as to the necessity of the notice to quit revolves around what kind of tenancy, if any, existed between the parties. In this case, the Wallaces were given permission to enter and use part of the Rogier land in the expectation that they would negotiate and conclude the sale of the land. In many jurisdictions such an arrangement would be called a tenancy at will. W. Burby, Handbook of the Law of Real Property, § 49 (3d Ed. 1965). In Indiana, however, it is clear that if a person is using or living on another's land with permission but is not paying rent, the relationship is, at best, a tenancy at sufferance. *Soroka v. Knott*, (1929) 90 Ind.App. 649, 653, 168 N.E. 703, 705; *Simmons v. State*, (1955) 234 Ind. 489, 492 n. 1, 129 N.E.2d 121, 122 n. 1. *See also Indiana State Highway Commission v. Pappas*, (1976) Ind.App., 349 N.E.2d 808; *Cargar v. Fee*, (1894) 140 Ind. 572, 39 N.E. 93. Also, an express contract

is required for a tenancy at will in Indiana (IC 32–7–1–2), and it does not appear from the record that a contractual relationship existed concerning the Wallaces' stay on the land. Certainly no evidence was presented at trial of any terms or conditions of such a contract if one did, in fact, exist.

Accordingly, at best a tenancy at sufferance was created, and no notice to quit was necessary under IC 32–7–1–7.

The second issue on appeal is that there is no evidence to support the trial court's award of damages in the amount of $1,000 for wrongful possession. While in determining whether there is sufficient evidence to support the damages award we may not weigh the evidence nor judge the credibility of the witnesses, *Daly v. Nau*, (1975) Ind.App., 339 N.E.2d 71, 78, it is equally true that the damages award may not be based on mere conjecture, speculation or guesswork. *Daly, supra* at 78.

In the case of loss of use of land, the rental value is the appropriate measure of damages. *Pappas, supra* at 812. *See also Wolff v. Slusher*, (1974) 161 Ind.App. 182, 314 N.E.2d 758. In this case, however, no evidence was presented at trial as to how long the Wallaces were in wrongful possession and no evidence was presented as to the rental value of the land wrongfully possessed. Thus, the trial court's award could only be based on speculation, conjecture or guesswork and must therefore be reversed.

The Wallaces next complain that the trial court did not make findings as to fraud and misrepresentation. However, we find no request for findings in the record as required by Ind. Rules of Procedure, Trial Rule 52(A). In such a case, there is no error committed by the trial court in failing to *sua sponte* enter special findings of fact. *Stevenson v. Stevenson*, (1977) Ind.App., 364 N.E.2d 161, 165; *Greiner v. Greiner*, (1979) Ind.App., 384 N.E.2d 1055.[1]

The final issue on appeal is whether there is insufficient evidence to support the trial court's judgment and whether the judgment against the Wallaces was contrary to law. Where the judgment is attacked as being based upon insufficient evidence, the reviewing court does not reweigh the evidence, or resolve questions of credibility of witnesses; rather, it will affirm if there is sufficient evidence of probative value to sustain the decision of the trial court. *Lake County Council v. Arredondo*, (1977) 266 Ind. 318, 363 N.E.2d 218. *In re Marriage of Lopp*, (1978) Ind., 378 N.E.2d 414. As to the Wallace negative judgment, when a judgment is attacked as being contrary to law, the Court of Appeals neither weighs the evidence nor judges the credibility of witnesses and such attack will only be sustained where the evidence leads to one conclusion and the trial court has found the opposite conclusion. We will treat these issues together.

Mrs. Rogier's affirmative defense to set aside the contract was based on the theories of fraud and misrepresentation. However, the testimony of the attorney who drafted the document, which we accept as fact under the standard of review outlined above, was that he drafted it and allowed the parties to sign it only on the understanding that the document was void and of no legal force. It was only to be shown to Wallace's banker. Thus, as between the Wallaces and Rogier the contract was a sham. Since the trial court's judgment will be upheld if it is sustainable on any legal theory supportable by the record, *Brockman v. Detroit Diesel Allison Div.*, (1977) Ind.App., 366 N.E.2d 1201, we will examine the legal effect of the sham contract.

When two parties enter into a sham contract, as between themselves, there is no contract and the document is thus unenforceable. 6A A. Corbin, Corbin on Contracts § 1473 (1962); 17 *C.J.S.*, Contracts, § 32; *New York Trust Co. v. Island*

---

1. The trial court did make a judgment entry but no actual findings of fact were contained therewith.

*Oil & Transport Corp.*, (2nd Cir. 1929) 34 F.2d 655. Of course, the cardinal rule of contract interpretation is to ascertain the intention of the parties from their expression of it. *Fort Wayne Bldg., Inc. v. Bank Bldg. & Equipment Corp.*, (1974) 160 Ind. App. 26, 309 N.E.2d 464. The court does not examine hidden intentions secreted in the heart of a person, but rather examines the final expression found in conduct. *Robison v. Fickle*, (1976) Ind.App., 340 N.E.2d 824. However, the intention of the parties is to be determined in the light of surrounding circumstances which existed at the time the contract was made. *Standard Land Corporation of Indiana v. Bogardus*, (1972) 154 Ind.App. 283, 317, 289 N.E.2d 803, 823.

In this case there was substantial evidence presented at trial from which we can conclude that neither party intended the document, at the time it was drafted and signed, to be a valid enforceable contract. We can find no purpose in enforcing it now.[2] "As compensation, this would be fruitless; as punishment, it would be capricious; as law it would create an obligation *ex turpi causa.*" *New York Trust Co., supra* at 656. We find no error as to this issue.

Affirmed in part, reversed in part.

LOWDERMILK, P. J., and LYBROOK, J., concur.

---

2. We distinguish, of course, the situation where an unknowing third party, who relies on the sham contract, seeks to enforce it.