Joseph REES, Appellant (Defendant Below),

v.

John H. HEYSER, Appellee (Plaintiff Below).

No. 1–1079A285.

Court of Appeals of Indiana, First District.

May 29, 1980.

Rehearing Denied July 7, 1980.

Bertwin J. Keller, Harlan, Schussler, Keller & Boston, Richmond, for appellant.

Marlin K. McDaniel, Richmond, Charles G. Reeder, Johnson & Weaver, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

John H. Heyser (Heyser) brought an action against Joseph R. Rees (Rees), alleging that Rees was indebted to Heyser in the sum of fifteen thousand dollars ($15,000). The trial court entered judgment in favor of Heyser, and Rees has appealed. On appeal, Rees alleges that the action is barred by res judicata, that the check given by Heyser to Rees on December 26, 1968 was in reality a loan since there was no adequate consideration, and finally, that the action was not timely filed. We affirm.

The facts, as revealed by the record, show that Rees withdrew $15,000 from Heyser's bank account, with his permission, from December 1, 1964 to June 3, 1965. The purpose of this was to permit Heyser to buy into part of a Burger Chef restaurant business in Cincinnati, Ohio, that was being formed by Rees. The venture, however, was eventually forced into bankruptcy. Although Heyser was to be a part owner, he never received any stock or other evidence of ownership. In order to secure this obligation, a promissory note was later executed between Heyser and his wife and Rees and his wife on February 8, 1968.

On December 26, 1968, Heyser and Rees exchanged checks for $15,000 at Rees's request, because of certain tax consequences that might prove favorable to Rees.

A complaint was filed on July 2, 1974, by Heyser and his wife seeking payment of the promissory note. Judgment was rendered in favor of Rees and his wife on that claim. The judge found that the check from Rees to Heyser on December 26, 1968 was given as payment in full upon the obligation represented by the note. The judgment made no mention of the $15,000 check from Heyser to Rees.

Less than one month following the judgment in the first case, Heyser brought this action based on the $15,000 check which Heyser executed to Rees on December 26, 1968. Judgment was entered in favor of Heyser on April 12, 1978. The trial court determined that Rees's check of December 26, 1968 was payment for the promissory note, but that Rees was still obligated to Heyser on the check of $15,000. The court, in reaching its decision, declared that the consideration for the transaction existed by virtue of Heyser cancelling the promissory note.

■ Initially, it should be recognized that Indiana allows two or more separate causes of action to arise from the same occurrence, and that judgment on one does not prohibit a suit on the other. *See State, Indiana State Highway Commission v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172; *Illinois Central Gulf R. Co. v. Parks*, (1979) Ind. App., 390 N.E.2d 1078.

Rees first argues on appeal that the action on the check of December 26, 1968, is barred by res judicata. In part, Rees contends that the trial court failed to rule on the merits of this defense because of its finding that the proper judgment was not placed into evidence. Since we determine that res judicata does not bar this action, we do not reach the procedural question of how a prior judgment is properly put into evidence. In relying on res judicata, Rees emphasizes that line of cases which hold that res judicata embraces not only what was actually determined, but also every matter which the parties could or might have litigated in the former cause. *See, e. g., Crown Point Community School Corp. v. Richards*, (1972) 154 Ind.App. 545, 290

N.E.2d 449; *Evansville American Legion Home Ass. v. White*, (1967) 141 Ind.App. 574, 230 N.E.2d 623. *See also Matter of Estate of Apple*, (1978) Ind.App., 376 N.E.2d 1172; *Blake v. Blake*, (1979) Ind. App., 391 N.E.2d 848.

While we recognize and are cognizant of this precedent, we find the reasoning used by Judge Remy in *Jordan v. Sisson*, (1924) 82 Ind.App. 128, 141 N.E. 881 and quoted in *Board of Commissioners of Adams County v. State ex rel. Gibson*, (1948) 226 Ind. 633, 82 N.E.2d 891 as persuasive in applying the above concept:

> The rule that every question which might have been decided or litigated in a cause will be presumed to have been decided means that *every question which was within the issues*, and which under the issues might have been proved, will be presumed to have been proved and adjudicated. [Emphasis added].

226 Ind. at 636, 82 N.E.2d at 892.

■ The basis of much of Indiana's law on res judicata emanates from our supreme court's opinion in *Town of Flora v. Indiana Service Corporation*, (1944) 222 Ind. 253, 53 N.E.2d 161, wherein the court recognized the two well defined branches of res judicata. Those branches were discussed and analyzed by Judge Buchanan in the recent case of *State, Indiana State Highway Commission v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172. The first branch of res judicata is characterized by the term "claim preclusion". This will be applicable when there is a final judgment on the merits in a prior case, which acts as a complete bar to a subsequent action on the same claim between the same parties or those in privity with them. The second branch or "issue preclusion" is applicable when a particular issue is adjudicated and put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them. In this instance, the former decision on the issue is binding on the parties in the subsequent suit. *See State, Indiana State Highway Commission v. Speidel, supra* (and cases cited therein).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

■ In applying these tests to the facts of the present case, it is clear that the action is not barred by res judicata. As to the claim preclusion branch, the first action was on the promissory note, while the second action was based on the check given to Rees on December 26, 1968. The judgment of the court in the first action clearly stated that the only issue decided was whether the promissory note was in fact paid by Rees's check to Heyser. The court made no determination of the effect of Heyser's check to Rees. Additionally, it is evident from reading the transcript of the first trial, that the only claim being adjudicated was Heyser's right to payment on the note. In fact, Rees's counsel objected to the introduction of the check from Heyser to Rees for the reason that it had no bearing on the case. Likewise, in his argument in support of a motion for judgment on the evidence, defense counsel again stated that the check from Heyser to Rees was not an issue before the court at that time, but "perhaps is another cause of action."

In applying the claim preclusion branch in conjunction with the reasoning used by Judge Remy in *Jordan v. Sisson, supra,* it is evident that the question of Heyser's check to Rees was not within the issues of the first action. Although it may have been preferable to consolidate both causes, it is clear from the record that the judgment of the first cause was limited solely to Rees's liability on the note, and decided nothing with regard to Heyser's check to Rees for $15,000. Therefore, the claim preclusion branch of res judicata is inapplicable.

■ We next turn to the second branch of res judicata, collateral estoppel or "issue preclusion". As noted earlier, issue preclusion results when an issue decided in a prior case is put into issue in a subsequent case. If it is, the first adjudication of the issue will bind the parties as to that point in the subsequent suit. There are two requirements necessary for the application of issue preclusion. The first is identity of the parties, and the second is mutuality of estoppel. *State, Indiana State Highway Commission v. Speidel, supra* citing *Dayton v.*

*Fisher,* (1870) 34 Ind. 356. In order for issue preclusion to apply, both of these requirements must be met. The first, identity of parties, is easily met. The fact that Heyser and Rees's wives were parties in the action on the note, but not parties in the action on the check, is not of substantial consequence to remove the cause from this requirement. The second requirement, however, mutuality of estoppel is not met.

■ Judge Buchanan in *Speidel, supra,* declared that "[e]stoppel is mutual if the one taking advantage of the prior adjudication would have been subsequently bound had the prior judgment gone the other way." 392 N.E.2d at 1177. This requirement is not met, because the issue of the December 26, 1978 check from Heyser to Rees was never litigated. Had the trial court, in the action on the note, found Rees to still be liable on the note, then the issue of Heyser's December 26, 1968 check to Rees would have had to also been decided, which would have precluded any later action by Heyser. Consequently, there could not have been any subsequent action in which Rees could have been bound by the first judgment, and without this subsequent action there can be no mutuality of estoppel.

Therefore, since the action on the check was not adjudicated in the original action on the note, there is no collateral estoppel or "issue preclusion" as to this issue. Consequently, since neither the "claim preclusion" nor the "issue preclusion" branch of res judicata are applicable to the present case, it is clear that Heyser's action, based on the December 26, 1968 check to Rees, is not barred by res judicata as a result of the unfavorable decision in Heyser's first claim based on the promissory note.

Rees next argues that the check from Heyser to himself was a mere gift in that it was given without consideration and that there was no interest or time of repayment established. In essence, Rees has asked this court to reweigh the evidence and interpret it in a light more favorable to his position. We must, of course, decline this invitation. The trial court explicitly declared that the

check from Heyser to Rees was not a gift even though no specific agreements with regard to interest or time of repayment were made. Further, the trial court determined that the cancellation of the promissory note was adequate consideration for the transaction.

██ It is well settled that on appeal, the trial court's judgment will be upheld if it is sustainable on any legal theory. *Wallace v. Rogier*, (1979) Ind.App., 395 N.E.2d 297. Additionally, this court will not reweigh the evidence or resolve questions of credibility of the witnesses; rather, we will affirm if there is sufficient evidence of probative value to sustain the decision of the trial court. *Wallace v. Rogier, supra; Grad v. Cross*, (1979) Ind.App., 395 N.E.2d 870. Based on the evidence in the record, there is sufficient evidence of probative value to sustain the trial court's determination.

Finally, Rees claims the action was not timely filed based on the applicable six (6) year statute of limitations for contracts not in writing. *Ind.Code* 34–1–2–1. Both Rees and Heyser concede that there is a lack of Indiana case law as to when the statute of limitations begins to run on an unwritten contract for the repayment of money absent any definite terms of repayment in the agreement.

Rees ably argues three alternatives as to why the action was not timely filed. We note for clarification that the check was given to Rees on December 26, 1968 and suit was not filed until June 12, 1975. First, Rees urges us to adopt the rule applicable to written notes, payable on demand, which states that the statute of limitations begins to run at the date of the instrument. This we decline to do, because of the uncertainty surrounding an unwritten contract for repayment. Whereas a written demand obligation evinces certain rights and duties on behalf of each party, an unwritten contract for repayment is often nebulous and dependent solely upon the goodwill of the parties.

Secondly, Rees urges us to adopt a rule that would require a demand to commence the running of the statute of limitations,

which must be made within the time of the statute of limitations from the date of the contract. We must also decline to accept this alternative. As we interpret Rees's argument, this procedure would allow for a lengthening of the statute of limitations. For example, if the demand was made in the fifth year, as we view Rees's argument, the demand would be timely since it was made within the original six year period from the date of the exchange. The question then becomes within what period of time does a party have to file suit. If the party receives an additional six years, then the action on the claim, in this example, has been suspended for eleven years. It cannot be open to reasonable debate that such a result would be detrimental to all parties, including the court, which must strive to sort out the truth, and actually defeats the purpose of the statute of limitations. We opine such a system to be unmanageable.

Rees's third alternative is merely an application of his second alternative in which he asks us to reweigh the evidence presented in order to determine that the demand was not made within the six years following the exchange of checks on December 26, 1978. We of course must decline this invitation. *Wallace v. Rogier, supra; Grad v. Cross, supra.*

██ Due to the lack of Indiana case law on the subject, it is appropriate for this court to make a statement as to what rule we discern most appropriate. To restate the issue, we need to determine when the statute of limitations begins to run on an unwritten promise to pay money when there is no definite time for repayment. On a demand obligation, the statute of limitations begins to run from the date of the loan. *Akre v. Washburn*, (1979) 92 N.M. 487, 590 P.2d 635; *Johnson v. Wold*, (1970) Wyo., 475 P.2d 714. Under the facts of this case, the repayment of the check given by Heyser to Rees was not a demand obligation. The demand obligation ran from Rees to the payor bank. The obligation of Rees back to Heyser was something less, and more indefinite.

From our research, we are impressed with the reasoning of the Court of Appeals of Oklahoma in *Stromblad v. Wilderness Adventurer, Inc.,* (1978) Okl.App., 577 P.2d 918. In *Stromblad,* the court was faced with an oral agreement to repay money. The plaintiff claimed that it was a demand obligation, requiring the statute of limitations to begin to run from the date of the note. The court, after reviewing the record, determined that there was no evidence that the loan was payable on demand, and therefore, declared that the applicable statute of limitations did not begin to run until a reasonable time for performance had lapsed. Further, the court determined that the question of a reasonable time is one to be determined by the trier of fact in light of all the circumstances disclosed by the evidence. *See also Twin Lakes Reservoir and Canal Co. v. Bond,* (1965) 156 Colo. 433, 399 P.2d 793.

■ We consider such a rule to be the proper manner by which to determine the statute of limitations in a situation where there is an unwritten promise to pay and an indefinite time for repayment, and therefore, expressly adopt it to guide Indiana courts.

■ In applying this rule to the present case, we reach the following result. The transaction occurred on December 26, 1968. The six year statute of limitations would have expired on December 27, 1974. The present action was filed on June 12, 1975. This is less than six months after the statute of limitations would have expired without this rule of reasonable time. Therefore, the question is whether six months was a reasonable time for performance, tolling the running of the statute of limitations for that period. We cannot say that as a matter of law it was not. Consequently, the trial court as the finder of fact must be affirmed.

Finding no error in the proceedings below, the trial court is in all matters affirmed.

Judgment affirmed.

NEAL, J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

I respectfully dissent.

I would reverse the judgment of the trial court on the grounds that the statute of limitations bars recovery. The plaintiff, Heyser, issued Rees a check for $15,000 on December 26, 1968, but did not sue on the implied-in-fact promise to repay [1] until July 12, 1975, over six yeas later. The majority holds that Rees' claim did not accrue, thus the statute of limitations did not begin to run, until Heyser had had reasonable time to perform: six months. I do not agree that this principle should apply in the present case.

In L. Simpson, Handbook of the Law of Contracts, ch. 3 § 46 p. 72 (West 1965) it is stated generally that "[i]n the case of contracts to pay money, however, if no date is fixed for payment the standard of a reasonable time is not applied and the promise is to pay immediately. This is not only true of negotiable instruments but also of nonnegotiable contracts."

That no writing expresses Rees' obligation makes no difference. The same rule applies when suit is brought on the common law action for money lent. *See* 58 C.J.S. Money Lent § 3a, p. 878 (1948). Indeed the present suit appears to be one such action.

Indiana law is not entirely barren of precedent on this issue.[2] In *Wagoner v. Wilson,* (1886) 108 Ind. 210, 8 N.E. 925, the plaintiffs brought an action to recover money which they had loaned to the defendants on a certain date and which the defendants had refused to pay. The defendants on appeal alleged error in the trial courts re-

---

1. *See Stanley v. Walters,* (1970) 147 Ind.App. 456, 261 N.E.2d 594, 597; 58 C.J.S. Money Lent § 2b (1948).

2. *Brown v. Brown,* (1885) 103 Ind. 23, 2 N.E. 233, appears to support the majority's position. On closer inspection it is distinguishable in that it involved the enforcement of an equitable mortgage.

fusal to grant a demurrer based on the absence of any allegation that the indebtedness sued on was due and unpaid. The court held "the paragraph seeks a recovery of money advanced to and for the use of the defendants in their business. Money so advanced, unless credit is stipulated for, becomes due presently. From the facts stated in the complaint the law implied that the money sued for was due." 8 N.E. at 926.

On the basis of this authority I would hold that the statute of limitations began to run from the time Heyser's money came into Rees' hands, 51 Am.Jur.2d Limitations of Actions § 134 p. 703 (1970), and that the present suit was filed too late.